170 Pa. Superior Ct. 625 (1952)
Muldoon Unemployment Compensation Case.
Yellow Cab Company of Philadelphia, Appellant,
v.
Unemployment Compensation Board of Review.
Superior Court of Pennsylvania.
Argued March 24, 1952.
July 17, 1952.
Before RHODES, P.J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.
Irving R. Segal, with him J.B. Millard Tyson, Gilbert W. Oswald, and Schnader, Harrison, Segal and Lewis, for appellant.
*626 William L. Hammond, Special Deputy Attorney General, with him Robert E. Woodside, Attorney General, for appellee.
OPINION BY HIRT, J., July 17, 1952:
We are all of the opinion that the reasoning, upon which the Board of Review awarded unemployment compensation in these cases, is specious. To affirm the orders would be the equivalent of saying that claimants who without authority induce an illegal stoppage of work amounting to a "wildcat strike", following a groundless labor dispute fomented by them, nevertheless are not barred from unemployment compensation, after their discharge by their employer because of their willful misconduct in these respects. Section 402(e) of the Unemployment Compensation Law as last amended by the Act of May 23, 1949, P.L. 1738, 43 PS § 802, provides: "An employe shall be ineligible for compensation for any week . . . in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."
North Garage is one of twenty similar garages from which Yellow Cab Company serves the City of Philadelphia. Two hundred forty drivers in the employ of this appellant operated out of North Garage, all of whom were members of Local 156 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A.F. of L. with whom the appellant had a labor contract. By automatic extensions the contract had been in force since March 5, 1949. Claimants William MacCain and Vincent Muldoon were drivers in appellant's employ operating out of North Garage. They also were stewards elected by the members of the Union to represent them at North Garage in ironing out current differences having to do with labor relations between employer and employe. *627 It was their duty also to notify the union of any violations of the labor contract. MacCain as steward represented the drivers on the day shift and Muldoon the night shift drivers.
Christmas day is one of the busiest of the year for appellant. To meet the problem of maintaining a sufficient number of taxicabs in operation it has been the custom of the appellant to ask drivers, who normally would be off duty under their schedules, to volunteer for work on that day. This was usually done in cooperation with the stewards of the day and night shifts who in turn submitted the names of men who desired to be off duty although scheduled to work on Christmas day. In this instance MacCain refused to cooperate but nevertheless submitted the names of 12 drivers who wanted to be off duty although scheduled to work on Christmas day 1949. The superintendent in charge of North Garage informed MacCain that he would excuse only three of the 12 men, to be selected in accordance with their seniority. On Christmas day 7 of the 9 men who had not been granted the day off remained away from work and accordingly were listed as absent without leave. They took the day off on MacCain's orders. Because of the failure of the 7 men either to report for work or advance reasons for their absence, disciplinary actions were brought against them and after a conference between the union and the appellant the 7 drivers were cited for a hearing on January 10, 1950. At the hearing they were "indefinitely suspended" by appellant for their refusal to work as scheduled. Thereupon claimants MacCain and Muldoon, who represented them at the hearing, ordered the cab drivers then present not to remove the cabs from the garage. As the following shift reported for duty, the other employes joined in the work stoppage and finally two hundred and forty drivers refused to *628 work. Of a total of one hundred and eighteen cabs in that location, not one of them operated from January 10th to January 16th, 1950.
The existing contract between the appellant and the union provided "Both parties agree that as long as this agreement is in force there will be no lock-out, strike, slow-down or refusal to perform his work or stoppage of work of any driver-employe of Company." The contract also contained the procedure for determining all questions bearing upon conditions of employment or disciplinary measures, and provided for the submission of disputes to arbitration in the event that the Union and the Company could not agree. Louis Wissler, appellant's division manager having North Garage under his supervision, appeared at the garage on January 10th and interviewed both MacCain and Muldoon. As to what occurred the Board found: "He asked them to order the men back to work and to arbitrate their grievance, if any, in accordance with the existing contract. The claimant [MacCain] and Mr. Muldoon refused to order the men back to their jobs, and Mr. Wissler then went out on the floor and ordered the men to return. The men refused and the work stoppage continued." On January 13th MacCain with another striking driver went to the Germantown Garage of appellant employer. Their conversation with several employes there indicated that they were attempting to induce the employes in that garage to join in the strike. On appellant's complaint they were removed by the police. On the same day Muldoon appeared at appellant's Columbia Garage. When two of the drivers reported to the garage superintendent that they had been approached and had been asked to support the North Garage drivers in their work stoppage, the police were called and Muldoon was removed. Thus claimants not only instigated the strike but attempted, *629 though without success, to spread the work stoppage to other company garages. As to subsequent events, the Board found: "Between January 10th and January 16th, 1950, several meetings were called by union officials at union headquarters and the drivers were advised to return to work because of the contract existing between the union and management. The drivers refused to return. On January 14th, 1950, the . . . drivers received telegrams instructing them to report back to work on their regular shifts on Monday, January 16th, 1950, and that failure to do so would result in dismissal." On January 16th some of the men returned to work but when claimants appeared, they were discharged by appellant because of their misconduct in relation to the stoppage of work at their employer's North Garage.
Section 402(d) of the Act provides: "An employe shall be ineligible for compensation for any week  in which his unemployment is due to a stoppage of work, which exists because of a labor dispute . . ." The ultimate finding of fact upon which the award is based in each instance is thus stated by the Board: "13. The claimant participated only in activities which were normally incident to a labor dispute during a period of work stoppage." The finding not only is in total and capricious disregard of the proofs but is flatly contradicted by undisputed testimony, accepted by the Board and reflected in other findings. Claimants although joining in a work stoppage were still employes of appellant until discharged on January 16th. They were members of the union and as such were bound by the terms of the contract entered into with the company by the union, as their bargaining agent. As stewards they were servants of the union, paid by the union, and as such were subject to control by it. In inducing the regularly scheduled drivers to refuse to work on *630 Christmas day, MacCain acted wholly without authority. And in fomenting the work stoppage at North Garage both claimants, again without authority, initiated a strike in violation of the union contract which was binding upon them; they also attempted to spread the strike to other garages. And they encouraged the drivers to persist in the work stoppage in defiance of orders from their employer and their union to report back to work and look to the procedure of the labor contract for the solution of their grievances. From the above considerations it is clear that the question here does not involve a restriction on the proper exercise of the right to strike.
On the false premise of the 13th finding, quoted above, the Board construed the applicable sections of the Unemployment Compensation Law thus: "Since the legislature in section 402(d) has designated the effect which a suspension of work shall have on a claimant's eligibility, and has done so without regard to the merits of the suspension, it is reasonable to conclude that the legislature intended to limit the disqualification in strike cases to that provided in section 402(d) . . . . On the basis of the foregoing considerations, we are of the opinion that the disqualifying provisions of section 402(e) are likewise not applicable to the mere act of striking per se. We further feel that neither a strike in breach of a company-union agreement nor a strike not sanctioned by the union at the employer's establishment can be characterized as willful misconduct. The same policies which militate against the consideration of the merits of a strike under section 402(d) are also applicable to their consideration under section 402(e)."
We find ourselves in entire agreement with the position taken by appellant. Under the pretext of statutory construction the Board in effect has rewritten *631 the Act. Actually there is no question of statutory construction involved. Section 402(d) in its original form was added to the Unemployment Compensation Law by the Act of April 23, 1942, P.L. 60. And this provision, intended to discourage strikes financed by compensation funds, was a part of the law when § 402(e) was enacted by the amendment of May 29, 1945, P.L. 1145. The amending Act denying compensation for unemployment due to discharge for "willful misconduct" is couched in general language, clearly and unmistakably intended to apply to the Unemployment Compensation Law in all of its provisions, without exception, including § 402(d). "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning": Com. ex rel. Cartwright v. Cartwright et al., 350 Pa. 638, 645, 40 A. 2d 30. An employe therefore may forfeit his right to unemployment compensation because of willful misconduct even though the misconduct which induced his discharge by the employer is related to a stoppage of work involved in a labor dispute. Nothing in the Act indicates that § 402(d) was intended to immunize an employe during a work stoppage in a labor dispute from the consequences of his willful misconduct connected with his work involving flagrant breach of duty to his employer and to his union, as in the present instances. Cf. Detterer Unemp. Compensation Case, 168 Pa. Superior Ct. 291, 77 A. 2d 886.
The orders are reversed.