Weimer Unemployment Compensation Case.

Argued April 21, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*A. J. Martin,* with him *Samuel Krimsly,* for appellants.

*William L. Hammond,* Special Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for appellee.

*Charles H. Coffroth,* for employer, intervenor, appellee.

OPINION BY RHODES, P. J., August 30, 1954:

This appeal applies to fifty-eight employes of the Black Beauty Coal Company, owner and operator of the Ruth Mine, Somerset County. They were disallowed compensation by the Unemployment Compensation Board of Review on the ground that their unemployment was due to willful misconduct, and were held ineligible to receive benefits under section 402 (e) of the Unemployment Compensation Law, as amended by

the Act of May 23, 1949, P. L. 1738, 43 PS §802 (e).[1]

Employment was under a collective bargaining agreement between United Mine Workers of America, of which claimants were members, and the Black Beauty Coal Company as a member of the Somerset County Coal Operators' Association.

Claimants last worked at the mine on September 11, 1952. On the preceding day, September 10, 1952, two other miners, Frank Dormish and Telford R. Baker, were suspended for two days, to wit, September 12th and 15th, for loading coal with an excessive rock content, designated as "dirty coal." These two employes had been previously warned concerning the loading of such unsalable coal.

The collective bargaining agreement provided for a two-day suspension for a second offense where, in the judgment of the management, the coal loaded by an employe contained an unreasonable amount of impurities.[2]

As a protest against the suspension of Dormish and Baker, the fifty-eight claimants remained away from work on Friday, September 12th, and Monday, September 15th, although work was available for them at

---

[1] Section 402 (e), 43 PS §802 (e), provides:

"An employe shall be ineligible for compensation for any week— . . . (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, . . ."

[2] The collective bargaining agreement provides, under Rule 1, par. 172, as follows: "If, in the judgment of the mine management, a car contains an unreasonable amount of impurities, the Mine Worker or Mine Workers so offending shall be subject, on the first offense, to warning and dockage; for the second offense, to two days' suspension and dockage; and for the third offense, within any 30 calendar days, to dockage and discharge; provided, that in malicious and aggravated cases the mine management shall have the right to discharge."

the mine if they had reported for work. On Tuesday, September 16, 1952, seven employes reported at the mine entrance in working clothes, and an undetermined number came up to a crossroad, about a half mile distant from the mine, but they did not enter the mine property or contact their employer or indicate that they were ready to resume work. No work was available on September 16th because the company had not prepared the mine for operation, in the absence of any notification or assurance that the men proposed to resume work on that day.

Thereafter, on September 18th, a mine committee met with representatives of the company and indicated the men would return to work providing the company would refrain from loading coal from other mines at the ramp and grant the employes certain other concessions relating to conditions of employment. These demands were not in conformity with the then existing collective bargaining agreement, and they were refused by the company. The reinstatement of Dormish and Baker was also demanded. Meanwhile, the company took no steps to resume operations at the mine, pending notification that the men would return to work under the terms of the existing agreement. Claimants having refrained from resuming work, on September 23, 1952, the company notified them by letter that they were discharged for absenting themselves from work for a period of two days without the employer's consent[3] and in thereafter refusing to return to work in violation of the agreement between the company and the United Mine Workers of America. Accrued wages

---

[3] Paragraph 65 of the collective bargaining agreement provides as follows:

"When any Mine Worker absents himself from his work for a period of two days without the consent of the Operator, other than because of proven sickness, he may be discharged."

and vacation allowance in accordance with the terms of the collective bargaining agreement were paid to claimants. Dormish and Baker were discharged for cause on September 23, 1952, by written notice. They did not appeal from the referee's decision disqualifying them for benefits.

On October 22, 1952, the claimants filed applications for benefits effective September 23, 1952. The bureau issued its decision holding that claimants' unemployment after September 23, 1952, was compensable. The company appealed from the bureau's decision, and the referee after a hearing reversed the bureau and disallowed claim credit for the weeks involved. On appeal from the referee's decision, the Board after hearing affirmed the referee's decision as modified, and held that claimants were disqualified under section 402 (e) of the Law, 43 PS §802 (e). This appeal followed.

Claimants maintain that the facts established a lockout by the company after September 16, 1952, and that consequently they were unemployed through no fault of their own and were entitled to compensation. See section 402 (d) of the Law, 43 PS §802 (d). A lockout may be described as the withholding of work by an employer from his employes in order to gain a concession from them. *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 560, 83 A. 2d 386; *Byerly Unemployment Compensation Case,* 171 Pa. Superior Ct. 303, 308, 90 A. 2d 322. In the present case there may be some evidence which tends to establish that the management took no steps to resume mining operations on September 16th or thereafter, but there is also testimony to the effect that the company would have prepared to open the mine on the sixteenth if the employes had notified the company they were willing to return to work. The Board made no

finding that a lockout existed, and a court cannot so hold in this case as a matter of law.

Claimants emphasize the fact that the agreement with the United Mine Workers did not contain a "no strike" clause or clause guaranteeing the continuation of work.

The Board's finding that claimants made the grievance of Dormish and Baker their own, and, acting in concert, voluntarily quit work for two days is supported by the evidence. Claimants' voluntary, intentional, concerted action in staying away from work for two days without any justifiable basis was clearly a violation of the existing agreement with the company. The suspension of Dormish and Baker did not concern claimants, and the work stoppage which they brought about was not predicated upon any grievance they had with the company. Moreover, the collective bargaining agreement provided procedures for the settlement of any grievances; these procedures were ignored. The absence of a "no strike" clause or "guarantee" clause in the agreement does not mean that claimants by their action in this case did not breach the agreement with the company. On the contrary, the action of claimants in remaining away from work, when they had no grievance or dispute concerning their conditions of employment, was a clear violation of their agreement, and they were guilty of willful misconduct under the provision of section 402 (e) of the Law. We are of the opinion that the absence of a "no strike" clause or "guarantee" clause does not differentiate this case so as to make inapplicable the principles announced in *Muldoon Unemployment Compensation Case,* 170 Pa. Superior Ct. 625, 631, 90 A. 2d 599; *Kern Unemployment Compensation Case,* 172 Pa. Superior Ct. 324, 94 A. 2d 82; *Gutshall Unemployment Compensation Case,* 173 Pa. Superior Ct. 251, 98 A. 2d 257.

"An employe therefore may forfeit his right to unemployment compensation because of willful misconduct even though the misconduct which induced his discharge by the employer is related to a stoppage of work involved in a labor dispute": *Muldoon Unemployment Compensation Case,* supra, 170 Pa. Superior Ct. 625, 631, 90 A. 2d 599, 602. The suspension of Dormish and Baker was authorized by the agreement, and claimants had no reason to make the grievance of the suspended employes their own. In any event, their acting in concert in quitting their employment was voluntary and willful, and furnished good reason for their subsequent discharge. Under section 402 (e) of the Law, they were effectively barred from the receipt of compensation. *Kern Unemployment Compensation Case,* supra, 172 Pa. Superior Ct. 324, 328, 94 A. 2d 82. "Willful misconduct," in this type of case, has been defined as an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employe, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer. *Detterer Unemployment Compensation Case,* 168 Pa. Superior Ct. 291, 294, 77 A. 2d 886; *Sopko Unemployment Compensation Case,* 168 Pa. Superior Ct. 625, 82 A. 2d 598; *Krawczyk Unemployment Compensation Case,* 175 Pa. Superior Ct. 361, 104 A. 2d 338.

Assuming that inferences might be drawn from some of the evidence to the effect that a lockout by the employer on September 16, 1952, had occurred, it would not be of any aid to claimants. The controlling facts as found by the Board established that claimants' unemployment was due to their own action in refraining from work as a concerted protest against the em-

ployer's lawful suspension of fellow workers under the provisions of the collective bargaining agreement. The Board's findings are supported by substantial evidence, and they justify the legal conclusion of willful misconduct. *Devlin Unemployment Compensation Case,* 165 Pa. Superior Ct. 153, 155, 67 A. 2d 639. The facts established, as the Board held, that claimants' discharge was for willful misconduct, and any other possible motives which could be imputed to the employer in discharging claimants are not material.

The credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board. The duty of this Court is performed by an examination of the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of every inference which can be logically and reasonably drawn from it. *Elnit Unemployment Compensation Case,* 168 Pa. Superior Ct. 158, 160, 77 A. 2d 668.

Decision is affirmed.