## Progress Manufacturing Company, Inc. *v.* Unemployment Compensation Board of Review, Appellant.

Argued November 20, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN and EAGEN, JJ,

164

*Alan Miles Ruben,* Deputy Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellant.

*Richard Kirschner,* with him *Louis H. Wilderman,* for intervenors, appellants.

*Geoffrey J. Cunniff,* with him *Josephine H. Klein,* for appellee.

*Gilbert Stein,* for interested parties under Rule 46.

OPINION BY MR. JUSTICE COHEN, January 2, 1962:

Progress Manufacturing Company and the International Brotherhood of Electrical Workers, Local 2002, entered into a collective bargaining agreement containing clauses stating that no strikes, lockouts, etc., would take place during the life of the agreement and

that all disputes would be arbitrated under a stated grievance procedure. On October 17, 1958, while this contract was in force, the Company discharged two employees, and the entire work force went out on strike. Progress then reduced the discharge in each case to a suspension and indicated its willingness to refer the issue to arbitration if all the striking workers would return by October 20, 1958. The union countered with a proposal that the two suspended employees be allowed to return to work pending the outcome of the arbitration proceeding, but Progress rejected this proposal.

On October 20, 1958 (a Monday), virtually all of the Company's nine hundred employees failed to report for work, and plant operations ceased on October 21, 1958. All of the employees received two notices from the Company on October 24, 1958. One stated that, because of participation in an unlawful work stoppage, the employee was suspended until further notice. The other instructed the employee to return an enclosed signature card if he was interested in returning to work. All of the employees returned the cards.

On October 28, 1958, the Company began to recall its employees, and by November 4, 1958, about seven hundred fifty had been recalled. The remainder were not recalled, and on November 10, 1958 they received notices from the Company that their services were terminated. The present claimants are among those whose services were thus terminated.

None of the facts related thus far are in dispute; nor are the legal principles applicable to the issue a matter of controversy. If the claimants were discharged because of their participation in an illegal work stoppage, an act of willful misconduct within the meaning of §402(e) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897, as amended, 43 P.S. §802(e), see *Weimer Unemployment Compensation Case,* 176 Pa. Superior Ct. 348, 107

A. 2d 607 (1954), they are ineligible for unemployment benefits. Hence, the critical question here is why were the claimants discharged?

The Bureau of Employment Security, the referee and the Unemployment Compensation Board of Review all found that the claimants had not been discharged because of their participation in the strike. The Superior Court decided to the contrary, with three dissents, and reversed the prior determinations of eligibility. The factual dispute centers upon the freely admitted (by the Company) point that, in determining whom to recall, the Company based its decision both on the individual's work record and qualifications and on the needs of the Company. The Company's director of industrial relations testified before the referee on cross-examination concerning the basis for selection: "We determined the recall by the needs of the Company ..." and again: "We considered the man's qualifications and ability in order to bring him back." and still again: ". . . It depended entirely on the man's performance, his ability, and it depended on that whether he should be called back or not." Undoubtedly because of this testimony, the Unemployment Compensation Board of Review made findings of fact as follows: "9. On October 28, 1958 the company began to recall employees in accordance with management's judgment as to the needs of the company." "15. In recalling the employees management scrutinized work records and decided that certain people were not qualified and, therefore, did not recall them."

The Superior Court held that, while these factors were important in determining whom to recall, it was only participation in the work stoppage which actually caused the discharges. In our opinion this view is unrealistic for the following reasons: First, despite the employer's argument that the suspension notice of October 24 was really a discharge, the facts indicate that

employment was actually terminated on November 10 when the notices of termination were sent to claimants—November 10 was two weeks after the work stoppage had ended. Second, no basis exists anywhere in the record for a differentiation between those recalled and those discharged relative to their participation in the work stoppage. It may well be that the work stoppage provided a fortuitous opportunity for the Company to engage in a procedure it had long desired— namely to discharge all the employees—but the record does not disclose that the Company availed itself of that opportunity. The Company suspended all employees indiscriminately for the illegal work stoppage and then indulged in a procedure of evaluating the qualifications, ability and work record to determine who should be retained and who should be discharged. It was this evaluation and not the illegal work stoppage that determined the discharge.

Most important, however, is the principle that the findings of the Board of Review as to facts, if supported by the evidence, are conclusive. Unemployment Compensation Law, supra, §510, 43 PS §830. Here the Board made findings of fact, stated above, which the Superior Court has disregarded despite the fact that the findings are well supported by the evidence contained in the record. The appellate courts do not exist to re-try factual matters better left to determination by the administrative agencies charged with hearing the cases, and we should not begin to alter this approach now. The Board, moreover, correctly applied the law to these facts and found claimants eligible.

The judgment of the Superior Court is reversed; the order of the Unemployment Compensation Board of Review is reinstated and the record is remanded to the Board to proceed as stated therein.

Justice ALPERN took no part in the consideration or decision of this case.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would affirm the judgment on the opinion of Judge ERVIN, speaking for a majority of the Superior Court.