Wolfe Unemployment Compensation Case.

Argued April 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Emil W. Herman,* with him *Rothman, Gordon and Foreman,* for appellants.

*Sydney Reuben,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY ERVIN, J., June 13, 1962:

These seven unemployment compensation cases, which were consolidated for hearings before the compensation authorities and for argument before us, were decided against the claimants by the bureau, the referee and the board.

The sole question involved is whether the appellants retired voluntarily or whether they were induced to do so by their employer. The factual circumstances are similar in each case but the dates upon which the appellants declared their intention to retire and the dates of retirement are different. Fritz S. Wolfe declared his intention to retire on June 5, 1959, effective June 30, 1959; Anthony Zammarchi declared his inten-

tion to retire on April 22, 1959, effective April 30, 1959; Frank H. Lytle declared his intention to retire on April 13, 1959, effective April 30, 1959; Frank X. Augustine declared his intention to retire on April 15, 1959, effective April 29, 1959; Raymond I. Burtner declared his intention to retire on April 22, 1959, effective April 24, 1959; William A. Dunmire's declaration of intention to retire and effective date occurred simultaneously on February 18, 1959; Herbert S. Hileman's last day of work was December 21, 1958 and he declared his intention to retire on February 17, 1959. On October 6, 1958 a work stoppage began which terminated on February 16, 1959.

At the time all the appellants retired there was no mandatory retirement age effective either by collective bargaining agreement or by custom. During and subsequent to the work stoppage, the union and the employer negotiated with regard to a mandatory retirement age of 68. Mr. John Pavlik, a union representative, testified as follows: "The strike continued on to January so they had to change this mandatory date from January 1 to February 1. Now, on February 7 the strike was six days past the mandatory retirement date of February 1, so the company gave the union another proposal. Since we were still on strike the company had to change the mandatory date from February 1 to May 1. This was agreed to by both sides. As you will note there was a constant change of the date but not any change of the substance of the pension agreement. Now, Mr. Sherbondy sent a letter to Mr. Ralph Reiser, let's say it is a proposal, and on Page 10 of this letter dated February 7, 1959, Section 2, it changes the mandatory date from February 1 to May 1, 1959." He further testified that on February 16, 1959 an election was held at which the members voted to approve a contract which provided for an effective date of May 1, 1959 for mandatory retirement for any person over 68

years of age. The agreement also provided that the amendment "is contingent upon and subject to obtaining such approvals of the Board of Directors and the Shareholders of the company . . . and is also contingent upon and subject to obtaining and retaining approval of the Commissioner of Internal Revenue of the deductability for income tax purposes of any and all payments made or to be made by the company hereunder and of the manner and means of providing for payment of the pension benefits as being tax exempt under the provisions of Section 401 or other applicable provisions of the Internal Revenue Code of 1954, as such codes may from time to time be amended." Mr. Pavlik also testified that this paragraph dealt with the enactment of the pension agreement. Mr. Pavlik also testified that he never told anyone that the effective date for compulsory retirement was prior to May 1, 1959.

On April 20, 1959 the employer posted a notice on the bulletin board which read as follows: "April 20, 1959 NOTICE TO: HOURLY PRODUCTION AND MAINTENANCE EMPLOYEES REPRESENTED BY UNITED GLASS AND CERAMIC WORKERS OF NORTH AMERICA, AFL-CIO-CLC. The recent amendment to the pension agreement between Pittsburgh Plate Glass Company and the United Glass and Ceramic Workers of North America, AFL-CIO-CLC, provides as follows:

" 'On and after May 1, 1959, retirement upon a pension of an eligible employee who has attained the 68th anniversary of his birth shall be mandatory.'

"Since the amendment to the pension agreement will not become effective until it has been approved by the Commissioner of Internal Revenue and since it is probable that such approval will not be received until some time after May 1, 1959, the mandatory retirement provision will not be enforced until such time as the entire amendment becomes effective. Employees who will be affected by the mandatory retirement provision will be

promptly notified when amendment to the pension agreement and the provision relating to the mandatory retirement become effective."

On July 8, 1959 the employer sent to all plant managers and employes affected, a notice which contained the following: "The Pension Agreement between the Company and the United Glass and Ceramic Workers of North America, AFL-CIO-CLC, covering hourly production and maintenance employees in the Plate and Window Glass Plants, as amended, effective September 25, 1958, provides in Section 1 A: '. . . On and after May 1, 1959, retirement upon a pension of an eligible employee who has attained the 68th anniversary of his birth shall be mandatory.'

"The amendments of the Pension Agreement have been approved by the United States Internal Revenue Department. Accordingly, the foregoing provision for mandatory retirement at age 68 will be made operative on July 31, 1959."

It is clear that all of the appellants requested retirement prior to July 31, 1959.

It is also clear that none of the appellants were in any way encouraged or induced to retire by the employer. In answer to a question whether the company told the respective appellants that they had to retire Raymond I. Burtner said: "No, nobody told me that or nobody told me I had to work until the 31st of July."; Frank H. Lytle's answer to the question was "No, sir."; Anthony Zammarchi's answer to the question indicated that nobody from the company made any such statement to him; Fritz S. Wolfe said that it was true that no one from the company had asked him to retire.

It is also true that some of the appellants expressly stated that they wanted to retire because of health reasons. Anthony Zammarchi said: "I retired because I wasn't feeling good. I had high blood pressure too.";

Fritz S. Wolfe, when asked why he didn't continue working after June 30 testified: "Well, one way it was voluntary and in another way I was under the impression I had to get out anyway."; Frank X. Augustine testified: "I just thought anyhow I was getting too old I was going to retire."

The company representative testified that all of these appellants could have continued working until July 31, 1959 if they had not retired prior thereto. The testimony of the appellants also clearly reveals that they knew they did not have to retire prior to May 1, 1959. All of them, with the exception of Wolfe, retired prior to May 1, 1959. Wolfe declared his intention to retire on June 5, 1959, effective June 30, 1959. If he had asked his employer at the time of his retirement whether he had to retire on June 30, he would undoubtedly have been told that he did not have to do so. The company's notice of April 20, 1959 clearly stated that the effective date of May 1, 1959 would have to be postponed and that the employes affected would be promptly notified when the new effective date would occur. It may be that some of these appellants did think that the compulsory retirement would be effective May 1, 1959. The fact is that it was not effective until July 31, 1959 and that an inquiry addressed to the employer would have given the appellants the correct information. So far as this record reveals the company did nothing to encourage or induce the retirement of the appellants. The record contains adequate credible evidence to sustain the finding of the compensation authorities that the retirement of each appellant was voluntary and was without cause of a necessitous and compelling nature within the meaning of §402(b)(1) of the Unemployment Compensation Law, 43 PS §802-(b)(1); *Kaman Unemployment Compensation Case,* 192 Pa. Superior Ct. 509, 161 A. 2d 663; *Zelek Unemployment Compensation Case,* 194 Pa. Superior Ct. 228,

166 A. 2d 110; *Craven Unemployment Compensation Case,* 195 Pa. Superior Ct. 136, 169 A. 2d 336; *Yeager Unemployment Compensation Case,* 196 Pa. Superior Ct. 162, 173 A. 2d 802; *Sable Unemployment Compensation Case,* 197 Pa. Superior Ct. 177, 177 A. 2d 115.

The findings of the board are supported by the evidence and are therefore conclusive: *Progress Mfg. Co., Inc. v. Unemployment Compensation Board of Review,* 406 Pa. 163, 176 A. 2d 632.

The credibility of the witnesses, the weight of their testimony and the reasonable inferences to be drawn from it are for the board: *Ristis Unemployment Compensation Case,* 178 Pa. Superior Ct. 400, 403, 116 A. 2d 271.

The decisions are affirmed.