Stiffler Unemployment Compensation Case.

Argued June 12, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*T. Dean Lower,* for appellants.

*Sydney Reuben,* Assistant Attorney General, with him *William C. Sennett,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY HOFFMAN, J., November 13, 1969:

This is an appeal from a denial of benefits to appellants under the Unemployment Compensation Law, §401, as amended, 43 P.S. §801(f)(2).

The facts in this case as determined by the Unemployment Compensation Board of Review follow. Both appellants took excused absences from their employment due to maternity in 1966. Under company policy, such excused absences could extend up to eighteen months, unless terminated sooner by the employee. After being certified by their physicians as able to work, they reported to the employer in February 1967 (well within eighteen months of their leave). They were, however, not rehired but instead were put on a recall list, since the employer was in the process of reducing its work force at that time.

Appellants then filed applications for unemployment compensation benefits on March 20, 1967, and reported weekly as required. These applications were denied for alleged failure to establish that appellants were unable to resume work because of a "reduction in force" by the employer.[1]

---

[1] Section 401 of the Act provides: "Compensation shall be payable to any employe who is or becomes unemployed, and who . . .

In making this determination, the Board relied exclusively on the fact that when appellants returned from their leaves of absence, their employer had a greater work force than when they began their leaves.

The Board refused to consider as relevant that when appellants reapplied for work, the employer was in the process of reducing its work force by not hiring replacements for job vacancies as they arose. Moreover, the Board also failed to consider as relevant that within two months following appellants' reapplication for work, which was also within eighteen months of their leaves of absence, the employer's work force fell below the level it had reached in February, 1966.

The issue before us, therefore, is whether the Board erred in finding that there was no "reduction in force."

The purpose of the Unemployment Compensation Act is to relieve employees against the distress of involuntary unemployment. As was stated in *Semanisin Unemployment Compensation Case*, 198 Pa. Superior Ct. 303, 305, 181 A. 2d 854 (1962), "the principal object of the unemployment compensation law is to alleviate economic distress in individual cases and to extend help to those unemployed through no fault of their own." Thus, when as in the instant case, the Act makes compensation dependent upon whether an employee has been refused employment because of a "reduction in force" this standard must be interpreted in light of the statutory purpose.

---

(f)(2) . . . on leave of absence for reasons of pregnancy has earned remuneration for services performed . . . in an amount equal to or in excess of four (4) times her weekly benefit rate. . . . Provided, however, That the provisions of this clause (2) shall not be applicable if the claimant (a) is unable to resume her employment . . . because of a reduction in force or because the business of such employer is closed down for reasons other than vacation. . ."

Here, it is conceded that the appellants were refused reemployment through no fault of their own. Rather, the employer had established an across-the-board policy of refusing work to all job applicants and persons returning from leaves of absence. Thus, on December 13, 1966 during appellants' leaves there were 1613 employees, but on the dates that appellants reapplied there were only 1577 and 1552 employees respectively. This policy was predicated on the fact that the employer sought to reduce his work force. Hence, appellants, without regard to their personal characteristics, or their desirability as employees were denied employment.

Under the terms of the Act, appellants' failure to be rehired was the direct result of this "reduction in force." Plainly, then, appellants fully deserved and should have been granted benefits when they applied for them. Any other result would be contrary to the legislative intent of the Act, and a gross misapplication of its provisions.

Moreover, after appellants had reapplied for work and were placed on the recall list, the employer's work force continued to drop until it dipped below the level attained when appellants first took their leaves of absence. Under the Board's rationale, employees who left at the same time as did appellants for pregnancy leaves of absence, but who reapplied at this point would be entitled to benefits. Appellants would not, however, because even though such time was well within eighteen months of their original leave the Board reasoned that they "terminated their leave of absence voluntarily when (they) contacted the employer regarding a return to work and under the provisions of the Law above cited this is the critical date."

No such inequitable and arbitrary result is required by the law. As Board Member Tagliannetti's dissent

points out, other claimants who waited longer before reapplying for work were granted benefits. Appellants on the other hand, who have evidenced a genuine willingness to return to work, have in effect been penalized for wanting to return too soon, rather than waiting for a more advantageous time to reapply.

Accordingly, the decision of the Unemployment Compensation Board of Review is vacated and this case is remanded for a determination consistent with this opinion.

MONTGOMERY, J., concurs in the result.

---

DISSENTING OPINION BY WATKINS, J.:

I respectfully dissent. The majority has misstated the findings of fact by the Unemployment Compensation Board of Review. The Board found as a fact that there was not a reduction in the work force at the time that the claimants were available for work.

The pertinent findings are as follows: "2. On July 29, 1966, the claimant was placed on a pregnancy leave of absence which was to extend for a period up to eighteen months but could be terminated by the claimant at any time prior thereto. 3. The claimant's child was born September 29, 1966. . . . 5. On February 1, 1967, the claimant having been released by her physician, contacted the employer regarding a return to work. 6. The claimant was not reemployed because she had been replaced. 7. At the time the claimant took her leave of absence on July 29, 1966, there were 1552 employes in the plant and 72 employes in the particular department in which the claimant worked. 8. At the time the claimant applied for reemployment on February 1, 1967, there were 1585 employes in the plant and 75 employes in the department in which she had previously been employed. 9. The claimant has had no employment and no earnings since July 29, 1966."

These findings of fact are supported by the evidence and are binding on the court. *Progress Manufacturing Company, Inc. v. Unemployment Compensation Board of Review,* 406 Pa. 163, 176 A. 2d 632 (1962).

The pregnancy leave question has given the legislature trouble since the inception of unemployment compensation. "The treatment of claims for unemployment compensation by female employes who become pregnant is a matter for the legislature." *Young Unemployment Compensation Case,* 200 Pa. Superior Ct. 511, 190 A. 2d 351 (1963).

The legislature has set forth its intentions as to pregnancy in §401(f)(2) of the Unemployment Compensation Act, 43 P.S. 801(f)(1)(2) and §402(f) of the Act, 43 P.S. 802(f). Section 401(f)(1) provides that a claimant under the pregnancy section who has failed to return to the labor market within a thirty-day period following childbirth is not entitled to benefits until she has earned four times her weekly benefit rate which is one-half the required earnings to qualify for benefits for those out of the labor market for other reasons. The act provides further: "That the provisions of this clause (2) shall not be applicable if the claimant (a) is unable to resume her employment, subsequent to the expiration of such thirty (30) day period or leave of absence, with the employer by whom she was laid off for lack of work or by reason of pregnancy or from whom she obtained a leave of absence, as the case may be, because of a reduction in force or because the business of such employer is closed down for reasons other than vacation or (b) having become re-employed by such employer is laid off by reason of reduction in force or plant shut-down for reasons other than vacation."

The majority treats the eighteen (18) month leave of absence as if it is related to the unemployment compensation requirements of the above section. However,

this eighteen month period is merely the maximum time which an employee may be granted as a pregnancy leave of absence under the collective bargaining agreement with the employer and is so fixed so that the employee may retain her seniority rights in the plant. During the leave of absence established by collective bargaining the job of the employee with regard to unemployment compensation is not retained for her, but the position may be filled by the employer so that when the request to return to work is made the job may not be available and this was found as a fact in these cases.

Under the law there is a thirty (30) day leave of absence for pregnancy after the birth of a child but, of course, by collective bargaining a longer period may be provided between the employer and employee. It is important, however, to remember that the legislature has made an expressed distinction between leave of absence generally and leave of absence because of pregnancy. *Colbert Unemployment Compensation Case,* 208 Pa. Superior Ct. 291, 294, 222 A. 2d 468 (1966).

Collective bargaining agreements cannot be used to reduce or increase the benefits provided by the legislature in the Unemployment Compensation Law. *Lybarger Unemployment Compensation Case,* 418 Pa. 471, 211 A. 2d 463 (1965).

In *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A. 2d 906 (1959), the Supreme Court said at page 552: "Support for the conclusion that a statutorily-expressed public policy cannot be modified by private agreement is readily found in analogous situations." In *Lybarger Unemployment Compensation Case,* supra, the Supreme Court said at page 484: "In addition, it is significant, as the Court in Gianfelice noted, that although an employee may not waive rights to which he is entitled, neither can the em-

ployer and employee 'agree that the latter receive benefits when the law precludes such benefits.' The Unemployment Compensation Fund is maintained by all the employers throughout the Commonwealth who are covered by the Act and who contribute to it for the benefit of their employees, see Pennsylvania State Chamber of Commerce v. Torquato, 386 Pa. 306, 125 A. 2d 775 (1956), cert. denied, 352 U.S. 1024, 77 S. Ct. 589 (1957). Any scheme by which an employer and employee attempt to invade that fund for purposes other than those for which it was designed and is being maintained thereby jeopardizes its solvency and destroys its trust characteristics and, therefore, must not be permitted."

In these cases the claimants by union agreement were granted eighteen month pregnancy leaves of absence. Claimant Stiffler went on leave April 22, 1966, and applied for reemployment on February 9, 1967, ending her leave and restoring herself to the labor market approximately ten (10) months after her leave began; claimant Bookhamer went on leave July 29, 1966, and ended the pregnancy by returning to the labor market on February 1, 1967, approximately seven months after leaving her employment. These are the critical dates.

In summary, in each of the present cases the claimant voluntarily terminated her pregnancy leave of absence when she contacted the employer regarding a return to work. At that time the work force had not been reduced. If benefits are to be paid because of a subsequent reduction in the work force, the legislature must so ordain.

WRIGHT, P. J., and JACOBS, J., join in this dissenting opinion.