Unemployment Compensation Board of Review of
The Commonwealth of Pennsylvania *v.* National
Aluminum Company, Appellant. (2 Cases)

Argued October 29, 1975, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Jacques M. Wood,* with him *Thorp, Reed & Armstrong,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, December 23, 1975:

This is an appeal by National Aluminum Company from two orders of the Unemployment Compensation Board of Review dated February 27, 1975, which reversed a referee's disallowance of benefits to six claimants. Each of the six cases developed from the same factual situation, and the appeals have been consolidated.

On May 14, 1974, a forklift truck operator at National's plant was involved in an accident which resulted in his suspension pending an investigation. On May 16, 1974, the plant manager was informed by employes of National that if the suspended employe was not reinstated, other National employes would refuse to work. On the evening of that same day, the third shift employes of National failed to report to work and set up a picket line to induce subsequent shifts to join in the walkout. The picket line was effective and National's plant was completely shut down until May 21, 1974.

National had a history of labor problems, including wildcat strikes, which prompted the company to send a letter dated June 25, 1973, to all of its employes. The letter stated that the "no strike" provision in National's contract with the local union (of which the claimants were members) would be enforced through disciplinary action, and that any work disruptions would be deemed a "serious offense." Consistent with this prior expression

of policy, National discharged 24 of the employes involved in the May 16, 1974, walkout, including the six claimants.

Our scope of review in unemployment compensation cases is to determine questions of law, and, in the absence of fraud, to determine whether the findings of the Board are supported by substantial evidence. *Myers v. Unemployment Compensation Board of Review,* 17 Pa. Commonwealth Ct. 281, 330 A.2d 886 (1975).

At issue in this case is the application of Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e), which renders a claimant ineligible for benefits if his unemployment is due to a discharge for willful misconduct. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). The Board's adjudication indicates that it believed National was required to prove, under Section 402(e), that the claimants "instigated or fostered" an illegal work stoppage. This was error. *Participation* in such a work stoppage is all that must be shown. *Progress Manufacturing Company, Inc. v. Unemployment Compensation Board of Review,* 406 Pa. 163, 176 A.2d 632 (1962). "Participation" includes honoring an illegal picket line[1] and failing to report for work solely because of the presence of an illegal picket line. *Progress, supra; Miller v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 171, 324 A.2d 793 (1974); *Weimer Unemployment Compensation Case,* 176 Pa. Superior Ct. 348, 107 A.2d 607 (1954).

The Board's major contention is that National did not discharge the claimants because of their *participation,*

---

1. Not only was the strike against National a violation of the collective bargaining agreement, but it also violated a temporary restraining order issued by the United States District Court for the Western District of Pennsylvania.

but rather because of their alleged *instigation*, and that we should consider the crucial question to be National's reason for the discharges. The Board relies on *Progress, supra,* where the Supreme Court held that a claimant could not be found to have been discharged for participating in an illegal work stoppage when the employer admitted that its sole basis for determining which striking employes were to be discharged was the employes' work performance records. It is true that in the instant case National only discharged 24 employes out of a total work force of approximately 140. It is also true that virtually all of National's employes failed to report for work. Unlike the employer in *Progress,* however, National's decision to dismiss these particular claimants was based solely upon factors related to the strike, *i.e.,* National dismissed every worker it believed was an active participant in the illegal picketing[2] at the plant. On this basis, *Progress* is distinguishable.

Unfortunately, neither the Board nor the referee made a specific finding regarding participation in the illegal strike. The *testimony* indicates that the six claimants failed to report for work and that they may have appeared on the picket line, but there is no finding of fact on these points. Consequently, we must remand this case for further action by the Board.

We point out that for these claimants to be denied benefits they must be shown to be guilty of *willful* misconduct, and not merely conduct which *appears* to be contrary to the employer's interests. We cannot close our eyes to the possibility that during the emotional episodes which frequently accompany labor disputes, and particularly sudden, wildcat strikes, some workers may be subject to coercive measures which render their com-

---

2. The Board points out that some of employer's evidence indicates that National discharged only those employes it determined had picketed more than once. Because of the result we reach this observation is of no significance.

plicity with the strike less than truly voluntary. *Cf. Unemployment Compensation Board of Review v. Tickle,* 19 Pa. Commonwealth Ct. 550, 339 A.2d 864 (1975). We do not suggest that such was the situation here, but we merely point out the possibility for the benefit of the Board.

ORDER

AND NOW, this 23rd day of December, 1975, the orders of the Unemployment Compensation Board of Review dated February 27, 1975, in the above-captioned matter are vacated and this matter is remanded to the Unemployment Compensation Board of Review for the formulation of more specific findings of fact in accordance with the above opinion, additional evidence to be taken in the discretion of the Unemployment Compensation Board of Review.