Dennis M. Hussar, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent; Volkswagen of America, Inc., Intervenor.

Argued May 8, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Robert J. Johnson,* with him *Anthony W. DeBernardo, Jr., Richard H. Galloway* & *Associates, P.C.,* for petitioner.

No appearance for respondent.

*B. Patrick Costello, Costello* & *Berk,* for intervenor.

OPINION BY JUDGE WILLIAMS, JR., July 23, 1981:

Dennis M. Hussar (claimant) appeals from an Order of the Unemployment Compensation Board of Review (Board) which reversed a referee's decision granting him benefits.

The claimant was employed for approximately twenty months by Volkswagen of America (employer); he was permanently discharged by the employer on June 19, 1979, due to his activities during an illegal work stoppage which occurred on June 12, 1979 at the employer's Westmoreland Assembly Plant (plant). The work stoppage occurred at approximately noon on June 12, 1979, in the paint department of the plant; at that time the claimant was also a member and officer of Local Union 2055, United Automobile, Aerospace, Agricultural Implement Workers of America (union). Claimant was a district committeeman for the union, and the employees of the paint department represented his constituency. The union contract in effect at the time of the work stoppage contained a "no strike" clause; under the contract it is a committeeman's responsibility to act in prevention of illegal or unauthorized work stoppages.

The issue which precipitated the work stoppage in question was a newly-instituted plant practice known as "tag relief." This issue was covered by the existing union contract, and both sides of this controversy agree that the union members could not lawfully strike

over "tag relief." Nonetheless, some did on June 12, 1979; and several of them, including the claimant, were discharged for doing so.

After being discharged, the claimant applied for unemployment compensation benefits. The Office of Employment Security (Office) determined that claimant was ineligible under Section 402(e) of the Unemployment Compensation Law (Law),[1] which section establishes ineligibility for one who is discharged from employment due to willful misconduct. The claimant appealed that determination to a referee, and the referee reversed the Office. The employer appealed the referee's decision to the Board. The Board remanded the case to the referee, acting as hearing officer for the Board, for the taking of additional evidence; and a lengthy hearing, during which thirteen persons testified, was held. Thereafter, the Board reversed the referee and denied benefits to the claimant due to willful misconduct under Section 402(e) of the Law.

The claimant first argues that the Board abused its discretion by remanding the case to the referee after a hearing had already been held at which the employer had a full opportunity to be heard. We must disagree. The claimant's argument is premised on the errant conclusion that an employer must present compelling reasons to the Board to be granted a remand. The law is clear that the Board has discretionary power to remand a case to the referee for the taking of additional evidence if the Board determines that the record before it is inadequate for a proper resolution of the issues presented. Section 504 of the Law, 43 P.S. 824, establishes this power of the Board.[2] We therefore reject the claimant's initial contention.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] Section 504 provides as follows:
   Powers of board over claims.

Claimant further argues that the Board should be reversed because of the referee's refusal to sequester witnesses at the remand hearing, and because the evidence as a whole fails to support the Board's decision.

As to the sequestration of witnesses, claimant urges this Court to establish a sequestration requirement for unemployment compensation hearings. We must decline to do so. Such a requirement has no basis in law, and would alter the well-settled rule that sequestration of witnesses is a matter not of right, but of discretion of the trial judge.[3] In ruling on sequestration of witnesses, a presiding judicial officer weighs the procedural practicalities against the potential prejudice inherent in one witness overhearing another witness's testimony. The primary concern of the respective tribunal in such matters is that the hearing being conducted is conducted fairly. Absent a showing that this

---

The board shall have power, on its own motion, or on appeal, to remove, transfer, or review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence. When any claim pending before a referee is removed or transferred to the board, the board shall afford the parties and the department reasonable opportunity for a fair hearing. The parties and the department shall be duly notified of the board's final decision and the reasons therefor. A complete record shall be kept of each case heard before the board. All testimony at any hearing before the board, whether on appeal or otherwise, shall be taken by a reporter, or recording device, but need not be transcribed unless the disputed claim is further appealed.

[3] See *Coonan v. Baltimore & Ohio Railroad Co.*, 25 F. Supp. 834 (E.D. Pa. 1938).

fundamental right to a fair hearing has been denied, the presiding officer's denial of a request to sequester witnesses, if it be error at all, is harmless error. The instant appeal presents no unique circumstance to justify a departure from this established principle of law; the claimant's contention to the contrary is without merit.

Claimant's final contention, that the evidence as a whole fails to support the Board's decision, is equally devoid of merit. The record before us contains testimony from the employer and its witnesses that the claimant encouraged employees in the plant's paint department to leave their posts and join an illegal walkout. Although the claimant presented witnesses who testified to the contrary, the Board found the testimony of the employer and its witnesses to be more credible. Credibility of witnesses and the resolution of conflicting testimony are matters for the Board to decide; the Board's findings in such matters, when supported by substantial evidence, in the absence of fraud, are binding upon this Court. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Astarb v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 638, 413 A.2d 761 (1980).

The Board found that the claimant attempted to induce employees in the wax booth area of the plant's paint department to support an illegal work stoppage; the Board's finding is supported by substantial evidence in this record, and binding on this Court. Once the claimant's participation in, or encouragement of, the illegal work stoppage is established, the law is clear that such conduct constitutes willful misconduct within the meaning of Section 402(e) of the Law. *Moran v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 195, 400 A.2d 257 (1979); *Unemployment Compensation Board of Review*

*v. National Aluminum Co.*, 22 Pa. Commonwealth Ct. 519, 349 A.2d 527 (1975). Claimant was thus properly denied unemployment compensation benefits, and the Board's Order which so decreed is affirmed.

ORDER

AND Now, the 23rd day of July, 1981, the Order of the Unemployment Compensation Board of Review, at Decision No. B-182908, dated April 3, 1980, is affirmed.