Vicki **VALDEZ**, Plaintiff–Appellant,

v.

Avrim **CANTOR**, D.O.P.C., Gary A. Tarshis, M.D.P.C., Mark W. Walton, D.O.P.C., Mark S. Fraley, D.O.P.C., and Express-Care Plus, Defendants–Appellees.

No. 98CA2386.

Colorado Court of Appeals, Div. II.

Dec. 23, 1999.

Law Offices of J.E. Losavio, J.E. Losavio, William J. Culver, Max Addison Wilson, Pueblo, Colorado, for Plaintiff–Appellant.

Cornish & Dell'Olio, Craig M. Cornish, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge CRISWELL.

Plaintiff, Vickie Valdez, a former employee of defendants (ExpressCare), appeals from the summary judgment entered by the trial court that dismissed her claims for breach of a fixed term employment contract and for breach of an express covenant of good faith and fair dealing. We affirm in part, reverse in part, and remand for further proceedings.

Based upon the allegations of plaintiff's complaint and the evidentiary materials submitted for consideration upon ExpressCare's motion for summary judgment, it appears that plaintiff was first employed as the administrative director of ExpressCare, which operates a medical clinic in Colorado Springs, in December 1993. The duties of this position were numerous and included the responsibility for supervision of most of ExpressCare's non-physician employees.

Plaintiff's employment was governed by a series of one-year, fixed term, written employment agreements. The last contract provided that its term "will begin on 12/1/97 and continue for twelve (12) months."

The agreement contained no express provisions establishing when or under what conditions this agreement might be earlier terminated. However, the last paragraph of this agreement says:

> Please refer to the Office Employee Handbook for details of other office benefits and policies as they relate to the position of Administrative Director.

The handbook referred to is one that had been unilaterally promulgated by ExpressCare, and that handbook contains several specific references to "Administrative Director." Nevertheless, plaintiff has conceded that the foregoing language caused all of the provisions of this handbook to be incorporated into her written agreement. We will accept that concession for purposes of our analysis here.

The handbook apparently is applicable to all of the approximately 30 non-physician employees of ExpressCare. It establishes a probationary system that allows an employee who successfully completes probation to be terminated only if his or her performance "falls below acceptable standards."

In addition, however, the handbook also provides that:

> In rare and unusual circumstances, an employee may be terminated through no fault of his or her own, due to a 'reduction in force.' If this should occur, the employee will be paid for accumulated benefits. (quotation marks in original)

On February 6, 1998, some two months after the execution of plaintiff's most recent contract, her employment was terminated, and another employee was hired to act as the clinic's chief financial officer. The reasons for plaintiff's termination were summarized in an affidavit from one of defendants as follows:

In January 1998 the doctors in the office recognized that, due to financial reasons, we needed to hire a chief financial officer with a background in running all of the financial operations of a small family practice medical clinic.

After reviewing overhead and operational needs of the clinic, we concluded that we could not hire a chief financial officer without eliminating substantial costs of our operation which we concluded could only be achieved by eliminating the cost and position of Administrative Director.

No details of the "financial reasons" that dictated the hiring of a "chief financial officer" appear in this record. However, it is undisputed that, whatever the financial circumstances that prompted the hiring of a financial officer, ExpressCare found it unnecessary to terminate any other employee, save plaintiff. Hence, ExpressCare continued to employ the same number of employees after plaintiff's termination as it did previously.

In seeking summary judgment, Express-Care alleged that the term "reduction in force" as used in the handbook was intended to include a circumstance, such as that here, in which it concluded in the exercise of its good faith business judgment that a job position should be eliminated, even though there was no net reduction in the total number of employees in its work force. Plaintiff, on the other hand, asserted that there could be no "reduction," unless there were fewer employees employed after the change than before.

Neither party claims that the pertinent term is ambiguous. Thus, neither submitted any evidence, beyond the four corners of the agreement and the handbook, to support her or its proffered interpretation of the phrase.

The trial court granted ExpressCare's motion for summary judgment. In doing so, it necessarily adopted the interpretation urged by ExpressCare, that elimination of plaintiff's position was a "reduction in force," although it did not specify any reasons for its conclusion.

## I.

■ The parties have cast the issue presented as one involving the proper interpretation of the term, "reduction in force," and in doing so, both have adopted absolute positions. Thus, plaintiff asserts that there can never be a "reduction" absent a net decrease in the number of employees employed by ExpressCare. ExpressCare, on the other hand, argues that, whenever it makes an honest business decision to change its workforce in some manner that results in the elimination of a position, such change constitutes a "reduction," even though another position is simultaneously created. Given the record here, we agree with plaintiff.

The term "reduction in force" is not an uncommon one, and it has been used in several statutes regulating the rights or benefits of employees. While that term has been subject to interpretation by several courts, ExpressCare has failed to provide a single instance in which that term has been held to describe a circumstance in which employment functions have been re-allocated among employees, without a net decrease in the number of employees in the work force.

In 14A *Employment Coordinator*, Personnel Manual ¶ 16,301 (1999), the term "reduction in force" is equated with the like terms, "layoff" and "downsizing," and it is said that each term refers to an employment termination resulting from economic factors rather than from a performance deficiency. Each of these terms, however, carries a connotation of a decrease in the total work force.

Perhaps the case closest in point to the circumstances here is *Ritter v. Strauss*, 261 F.2d 767 (D.C.Cir.1958). There, an employee was terminated upon the transfer into the agency of another employee. Holding that the employee's termination was not a "reduction in force" under the pertinent regulation authorizing a termination in such case, the court concluded that such a reduction can occur only if there is a "reduction in the net strength of the employing activity." *Ritter v. Strauss, supra*, 261 F.2d at 771.

Likewise, in *Roth v. School District of Scottsbluff*, 213 Neb. 545, 548, 330 N.W.2d 488, 491 (1983), it was held that the pertinent term, as used in a statute authorizing the termination of a teacher, was not unconstitutionally vague. It was held to refer to a

reduction in the number of teachers due to a "surplus of staff." *See also U.S. Merit Systems Protection Board v. Federal Labor Relations Authority*, 913 F.2d 976 (D.C.Cir. 1990) (reduction in force occurs only if employee is released because of exigencies such as lack of work, shortage of funds, or impact of a personnel ceiling); *Stiffler v. Unemployment Compensation Board of Review*, 216 Pa.Super. 106, 259 A.2d 191 (1969) (reduction in force occurs when employer decides to downsize and does not replace employees who have resigned). *Cf. Stow Teachers Association v. Stow Board of Education*, 2 Ohio App.3d 82, 440 N.E.2d 827 (1981) (reduction in force does not occur when employer simply does not replace several teachers who have resigned).

All of these decisions, which have considered the same term as ExpressCare used here, either expressly or by necessary implication, have accepted plaintiff's assertion that a "reduction in force" means that there has, in fact, been a reduction in the total work force and not simply the substitution of one position for another. We have failed to discover a single instance in which the term has been held to apply when the total number of employees has remained the same.

Further, in its manual, ExpressCare described the circumstances in which a "reduction in force" would occur as "rare and unusual." Such a description might well be apt if a reduction in the total number of employees of the clinic were to be effected. It hardly describes a managerial decision to abolish a single position and to create a single new one.

■ Finally, the handbook was unilaterally promulgated by ExpressCare. While we accept plaintiff's concession that its provisions were incorporated into her fixed term contract, nevertheless, in the case of any doubt with respect to a contract term, it should be construed most strongly against the drafter. *See Cheyenne Mountain School District No. 12 v. Thompson*, 861 P.2d 711 (Colo.1993) (finding school superintendent's contract to be ambiguous).

We conclude, therefore, that plaintiff's termination by ExpressCare here was not the result of any reduction in force within the meaning of the parties' agreement.

In reaching this conclusion, we have considered, but reject as irrelevant and unpersuasive, the two lines of authority relied upon by ExpressCare.

First, ExpressCare relies upon a series of federal cases decided under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. In such cases, a plaintiff is normally required to prove, among other things, that he or she was replaced by a younger worker. However, if the employee was not replaced, such as when several employees are laid off because of a lack of work or for other economic reasons (a circumstance that is referred to by the federal courts as a "reduction in force" or "RIF"), a plaintiff in an ADEA action must prove only that younger workers received more favorable treatment. *See, e.g., Barnes v. GenCorp, Inc.*, 896 F.2d 1457 (6th Cir.1990).

However, this is a court-created concept that was formulated only to consider the nature of proof to be required of a plaintiff in an ADEA action. It has little, if any, relevance to the question of the meaning to be placed upon the specific contract term at issue here.

Further, in none of the cases relied upon by ExpressCare was there a termination of only a single employee and the employment of another employee in another position. Rather, in each case, there was a net decrease in the number of employees in the employing unit. *See LeBlanc v. Great American Insurance Co.*, 6 F.3d 836 (1st Cir.1993) (budget cut required lay off of five employees); *Barnes v. GenCorp, Inc., supra* (restructuring resulted in termination of number of employees). *See also Solt v. Alpo Petfoods, Inc.*, 837 F.Supp. 681, 685 (E.D.Pa. 1993), *aff'd*, 30 F.3d 1488 (3rd Cir.1994) ("Because Plaintiff admits that her position was one of several which were eliminated, the court finds the RIF analysis to be appropriate.")

These decisions are, therefore, inapplicable to the circumstances presented here.

Second, ExpressCare relies upon a series of cases in which the employment contract

authorized the employer to terminate the employee only for good cause and in which the courts concluded that economic necessity amounts to good cause. This line of cases was referred to, in dictum, in *Soderlun v. Public Service Co.*, 944 P.2d 616 (Colo.App. 1997).

However, in all but one of the cases relied upon by ExpressCare, *Losacco v. F.D. Rich Construction Co.*, 992 F.2d 382 (1st Cir.1993), the employment agreement did *not* involve a fixed term contract. Rather, the agreement was either an express or implied contract for an indefinite term, but which limited the employer's right to terminate to good cause. *See, e.g., Taylor v. National Life Insurance Co.*, 161 Vt. 457, 652 A.2d 466 (1993) (implied contract based on terms of employee manual). And, in the *Losacco* case, an entire plant was closed, resulting in the layoff of all of its employees.

This is significant because there may be an arguable distinction between a contract for an indefinite period that requires good cause for termination and a contract for a fixed term. *See, e.g., Saxonia Mining & Reduction Co. v. Cook*, 7 Colo. 569, 4 P. 1111 (1884) (in dictum, court said that, under fixed term contract, employer must pay employee during term of that contract even if employer goes out of business).

Nevertheless, the parties' contract here describes with particularity the circumstances under which that contract can be terminated. Hence, cases dealing with contracts having no such provisions are inapplicable.

## II.

We reject plaintiff's assertion that the trial court erred in dismissing her two claims based upon an alleged breach of an express covenant of good faith.

These two claims were based upon an allegation that one or more of the defendants had, during the course of plaintiff's employment, assured her that she would be treated fairly. She alleged that such statement constituted an express covenant of good faith which was violated by ExpressCare's termination of her employment. We conclude, however, that such a claim cannot be asserted here.

First, our supreme court has not yet decided whether Colorado law recognizes a claim based upon a violation of an express covenant of good faith and fair dealing. *See Decker v. Browning–Ferris Industries*, 947 P.2d 937 (Colo.1997).

Even if such a claim is to be recognized, however, it is questionable whether a general statement by an employer that the employee will be treated fairly would be sufficient to give rise to a judicially enforceable obligation. Generally, such a statement must be sufficiently specific so as to allow a court to determine whether a breach has occurred and to adopt an appropriate remedy for any breach. *See Soderlun v. Public Service Co., supra.*

Further, even if the statements were sufficiently definite to be judicially enforceable, the covenant relied upon would not be applicable to the breach alleged, *i.e.*, plaintiff's termination. This topic is the subject of an express provision in the agreement. And, absent some claim that ExpressCare here was motivated by bad faith and that its economic justification was merely pretexual (which plaintiff does not allege), even an express covenant of good faith does not inject any new substantive terms into an express contract. *See Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo.1995); *Soderlun v. Public Service Co., supra.*

The judgment dismissing the two claims asserted by plaintiff based upon an alleged covenant of good faith and fair dealing is affirmed. The judgment dismissing plaintiff's claim for breach of the express fixed term contract is reversed, and the cause is remanded to the district court for further proceedings consistent with the views contained in this opinion.

Judge MARQUEZ and Judge RULAND concur.