John C. RITTER, Appellant,

v.

Lewis L. STRAUSS, Secretary of Commerce, et al., Appellees.

No. 14225.

United States Court of Appeals District of Columbia Circuit.

Decided Dec. 4, 1958.

1. 28 U.S.C.A.

Mr. Byron N. Scott, Washington, D. C., for appellant.

Mr. Hershel Shanks, Attorney, Department of Justice, with whom Asst. Atty. Gen. George C. Doub, Messrs. Oliver Gasch, U. S. Atty., and Morton Hollander, Attorney, Department of Justice, were on the brief, for appellees. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellees.

Before MADDEN, Judge, United States Court of Claims,* and WILBUR K. MIL-LER and BAZELON, Circuit Judges.

MADDEN, Judge.

The appellant sued to compel the Secretary of Commerce, the Civil Service Commission and other officials of the Government to restore him to a GS-11 position in the Bureau of the Census in the Department of Commerce. In the District Court the parties made cross motions for summary judgment. The motion of the defendants was granted, without opinion, and the plaintiff has appealed.

In 1951 the appellant and one Henry A. Bloom each held GS-11 positions in the Bureau of the Census, Bloom having some ten days seniority over the appellant. In that year Bloom applied for and was appointed to a position in the Canadian Office of the National Production Authority, which Authority was another branch of the Department of Commerce, established by the Secretary of Commerce under authority delegated to him by the President pursuant to the Defense Production Act of 1950, 64 Stat. 798, 50 U.S.C.A. Appendix, § 2061 *et seq.* The appellant remained in the Bureau of the Census and was detailed to a GS-12 position on June 7, 1952.

In March 1953 Bloom received a reduction in force (R.I.F.) notice from the National Production Authority, and his last day of work in that branch was May 22. In view of the R.I.F., Bloom asked for his old job in the Bureau of the Census, and resumed it immediately after May 22.

On May 29, 1953 the appellant was given a R.I.F. notice by the Bureau of the Census, stating that his last day of work would be June 30. By subsequent letters, the appellant's separation was postponed to August 28. On August 30 Bloom was promoted from his GS-11 position to the GS-12 position which the appellant had been holding in an acting capacity for more than a year.

The appellant claims that there was no genuine reduction in force since Bloom was brought in to replace him, leaving the same number of employees after as before the purported reduction.

The fact of Bloom's former employment in the Bureau of the Census is immaterial, since the parties agree that Bloom had no reemployment rights. Executive Order No. 10180, U.S.Code Cong. Service 1950, p. 1671, issued November 13, 1950, 15 F.R. 7745, granted authority to the Civil Service Commission to prescribe regulations governing the rights to reemployment of employees transferring from one agency of the Government to another. The Civil Service Commission, by Transmittal Sheet 316, of November 13, 1950, by Departmental Circular No. 643 and a press release, both issued on November 30, 1950, by Departmental Circular No. 653 issued on February 23, 1951, prescribed the procedure by which an employee might obtain reemployment rights. The prescribed procedure was not followed in Bloom's case.[1]

The defendants rely upon Civil Service Regulations, section 8.108, 17 F.R. 343, which in fact was cited by the Bureau of the Census in its personnel files as the legal basis for Bloom's reemployment. The section says:

"The Commission hereby delegates authority to agencies:

"(1) To promote, demote, or reassign any permanent employee having a competitive status and serving in a competitive position."

The defendants say that Bloom's reemployment was merely a "reassignment" within the same "agency", the Depart-

* Sitting by designation pursuant to the provisions of Sec. 291(a) Title 28, U. S. Code.

1. The court, in its original decision of May 15, 1958, Ritter v. Weeks, 103 U.S. App.D.C. 109, 255 F.2d 187, which is now vacated, held that Bloom had reemployment rights by virtue of the order of the Secretary of Commerce establishing the National Production Authority. It now appears that that order had been rescinded some months before Bloom's transfer to that agency.

ment of Commerce. The plaintiff disputes this, and cites 13 U.S.C. 1, which denominates the Bureau of the Census as an agency within, and under the jurisdiction of the Department of Commerce. He cites 5 U.S.C.A. § 1001, defining the term agency for the purposes of the Administrative Procedure Act, giving it a definition which would apply to the Bureau of the Census. He cites the United States Government Organization Manual, 1951–52, which lists in Appendix C at page 656ff the departments and agencies which have submitted separate statements of organizations pursuant to the Administrative Procedure Act, and listing the Bureau of the Census and the National Production Authority as two such agencies. His most persuasive citation is that of Commerce Department Order No. 130, which rescinded Order No. 123 and provided that the Civil Service regulations relating to the transfer of employees between agencies should thereafter apply to the transfer of employees of the Department to the National Production Authority.

We think that the Department of Commerce itself regarded the Bureau of the Census and the National Production Authority as separate agencies, for the purpose of the application of Civil Service regulations.

The defendants, however, argue that one's retention status for the purpose of a reduction in force is not, in any event, an agency status, but a Government-wide status. They point to section 20.2(h) of the Regulations of the Civil Service Commission, 17 F.R. p. 11733 which says:

> "'Retention credits' are credits given for length of government service and performance ratings."

It may well be that if a vacancy occurs in an agency, and an employee with long Government service in an entirely different branch of the Government is hired to fill it, and there later develops the necessity for a reduction in force, the long period of Government service will give that employee a higher retention status than those who have been in the particular agency longer than he has been. But if an agency, a week before reduction in force notices are to be sent out, can hire such an employee from a different agency, and retain him and discharge another employee who has been longer with the particular agency, there is no real protection for faithful employees of the agency. While it would be hard to spell out in regulations any time limits within which such hiring could not be done, and we are cited to no regulation which attempts to cover such a situation, the instant case presents no real difficulty. The excess of employees making the reduction in force necessary was created by the hiring of Bloom shortly after May 22. On May 29 the plaintiff, whom Bloom was to replace, was given his reduction in force notice. The creation of the surplus of employees and the reduction in force eliminating that surplus were steps in the same transaction, both steps being in contemplation when the first step was taken.

■ In general, Government agency actions adversely affecting Government employees, whether they be demotions or separations, are occasioned for one of two reasons and there are statutes and regulations governing the circumstances under which such adverse actions may be taken and the manner in which they must be carried out. Separations for cause, that is, separations which are necessitated because of the poor performance or undesirable behavior of the employees are covered by the Lloyd-La Follette Act, 5 U.S.C.A. § 652, and by section 14 of the Veterans Preference Act, 5 U.S.C.A. § 863. Separations or demotions which are required to meet some administrative exigency within an employing agency are known as reductions-in-force and the applicable authority for such action is found in section 12 of the Veterans Preference Act, 5 U.S.C.A. § 861 and in the Civil Service regulations issued thereunder. From February 2, 1948 to June 29, 1949 section 20.2(a) of the regulations of the Civil Service Commission

contained the following definition of a reduction in force:

" 'Reduction in force' means the involuntary separation from the rolls of a department, or furlough in excess of thirty days, of one or more employees in order to reduce personnel. *Reduction in personnel may have to be made because of lack of funds, personnel ceilings, reorganization, decrease of work, to make a position available for a former employee with established reemployment or restoration rights, or for other reasons.* * * * " [Italics supplied.]

The italicized clause in the above quoted regulation sets forth the circumstances which, in general, justify an agency in initiating a reduction in force. On June 29, 1948 the Civil Service Commission made a minor change in this regulation. On January 30, 1953 the Civil Service Commission issued an extensive revision to Part 20 of its regulations relating to reduction in force in general. For some reason not explained in Transmittal Sheet 414 of the United States Civil Service Commission Federal Personnel Manual, the definition of reduction in force omitted the second clause of the former regulation, the one italicized in the above quotation. The transmittal sheet stated that the revisions in the regulation were intended to simplify and clarify reduction in force regulations. The primary concern of the Commission appears to have been to reduce the 23 possible subgroups of competing employees which had been set up in the former regulation to 6 subgroups. This revised regulation was the one in effect when the plaintiff was separated from his position. On May 14, 1957 the Commission again revised Part 20 of its regulations relating to reduction in force. At that time the primary concern of the Commission was to reflect in its regulations the holding of the United States Court of Claims in Parks v. United States, 147 F.Supp. 261, 137 C.Cls. 297, which held that a demotion occurring in connection with a reorganization in an employing agency amounted to a reduction in force and that preference eligible employees demoted in the course of such reorganization were entitled to the benefits of the provisions of section 12 of the Veterans Preference Act of 1944 and the Civil Service regulations governing reduction in force. Transmittal sheet No. 567 of the Federal Personnel Manual pointed out that as then written, the reduction in force regulations were applicable only where there was a reduction in the net strength of the employing activity. A demotion, of course, does not necessarily affect such net strength of the agency and the regulations were therefore revised to reflect the court's holding in the Parks case. The substance of the italicized sentence from section 20.2(a) of the 1949 regulations was reinstated in the 1957 version of the regulations which read as follows:

" 'Reduction in force' is the release of an employee from a competitive level by means of separation from the rolls, furlough for more than thirty (30) days, reassignment involving displacement, or change to lower grade; *when such actions are caused by lack of work, shortage of funds, reorganization, or exercise of regulatory reassignment or reemployment rights.* * * * " [Italics supplied.]

The transmittal sheet did not explain why the above-quoted regulation was revised to once more define the circumstances under which a reduction in force may be initiated. The transmittal sheet did state, however, that there are many situations in which the use of the reduction in force system is the most orderly and equitable means of shifting or separating employees whose skills have become surplus to the activity and that reduction in force applies to situations where adverse actions must be taken as the result of planned management decisions to change or eliminate previously assigned duties for reasons which are impersonal to the employees who are adversely affected. A reading of the reduction in force regulations as they have existed since the enactment of the Veterans Preference

Act of 1944 makes it clear that this comment on the part of the Civil Service Commission in 1957 did not represent any change in policy with respect to the circumstances which would give rise to a reduction in force in a particular Government agency.

■ In the circumstances of this case it would seem that the plaintiff's separation was not a "reduction in force" because it was not required by lack of work, shortage of funds, reorganization, exercise of regulatory reassignment or exercise of reemployment rights. It was made necessary by the employment of Bloom—not the regulatory reassignment or the reemployment of Bloom—but the employment of Bloom in a competitive level in which there was no vacancy.

Our conclusion is that the action of the defendants in discharging the appellant was in violation of the law and the applicable regulations.

■ The defendants urge that the plaintiff was guilty of laches in not filing his suit for reinstatement until fourteen months after the Civil Service Commission's Board of Appeals and Review had denied his appeal. When, as in this case, a Government employee has been discharged in violation of his legal rights, he should not be held to have forfeited those rights by lack of diligence unless there are strong equities which override those rights. The circumstances of the delay must be examined. In the instant case plaintiff's then counsel seems to have thought that if no attempt was made to appeal from the decision of the Civil Service Commission's Board of Appeals and Review to the Commission itself, the plaintiff might, if he brought a suit in court, be faced with the obstacle that he had failed to exhaust his administrative remedies. Perhaps he should have known better. Grasse v. Snyder, 89 U.S. App.D.C. 352, 192 F.2d 35; Elchibegoff v. Dulles, 95 U.S.App.D.C. 362, 222 F.2d 53, affirming D.C., 123 F.Supp. 831. But the doctrine of exhaustion of administrative remedies is a subtle one. The plaintiff also during the fourteen months unsuccessfully appealed to the Secretary of Commerce, who had the power to reinstate him. Federal Personnel Manual Chapter E2. The most important departmental order, the one determinative of the plaintiff's rights, was so unavailable to interested persons that it was not discovered by either plaintiff's or defendants' counsel except in research leading to a second motion for reconsideration of this appeal. In the circumstances we think the plaintiff is not barred by laches. When and if he seeks back pay for the period of his discharge, the question may be examined from that point of view.

The judgment of the District Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.