655 S.E.2d 52

**Amanda A. FRYMIER, Petitioner Below, Appellant,**

v.

**HIGHER EDUCATION POLICY COMMISSION and Glenville State College, Respondents Below, Appellees.**

Nos. 32163, 33296.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 2007.

Decided Oct. 12, 2007.

Kathleen Abate Cohen, Abate & Cohen, L.C., Morgantown, WV, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Elaine L. Skorich, Assistant Attorney General, Charleston, WV, for the Appellees.

PER CURIAM.

The appellant, Amanda Frymier (hereinafter "Ms. Frymier"), appeals from two orders entered by the Circuit Court of Gilmer County. The first was entered April 13, 2004, and was timely appealed to this Court. The issue was stayed and held in abeyance until later consolidated with Ms. Frymier's appeal of a second circuit court order entered June 4, 2006. By those orders, the circuit court found that Ms. Frymier was not entitled to bumping rights under W. Va.Code § 18B–7–

1 (2004) (Repl.Vol.2007) [1] and, further, that the appellee,[2] Glenville State College (hereinafter "GSC") did not make its job retention decision based on favoritism. On appeal, Ms. Frymier argues that she was entitled to bump a less senior employee, and that GSC committed favoritism in the treatment of its employees and the decisions made regarding their respective status. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the decisions of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Ms. Frymier is currently an employee at GSC, and has been an employee since May 19, 1980. Ms. Frymier's tenure at GSC has encompassed different job positions with varying job duties. Since July 2000, she has been classified as an Accounting Assistant I. Prior to July 2003, she was a full-time equivalent employee ("FTE"), working 37½ hours per week. In July 2003, in response to state-mandated budget cuts, GSC reduced working hours for thirty-six jobs, including Ms. Frymier and two other Accounting Assistant I positions.[3] Ms. Frymier went from a 1.0 FTE, to a 0.87 FTE. While she was still considered full time, her hours were reduced about an hour per day and her salary and benefits were prorated accordingly. Ms. Frymier's salary dropped from approximately $30,000 per year to about $26,000 per year.

Ms. Frymier filed a grievance. The basis of Ms. Frymier's complaint was that an Accounting Assistant I position held by a co-worker with only eight years of seniority was left as a 1.0 FTE. Ms. Frymier argued that, with her seniority based on her total of twenty-three years of employment, she should be allowed to bump into the 1.0 FTE job. GSC responded that it made decisions on reduction in hours based upon the job duties that were most essential to its operations, and that neither seniority nor job performance were considered.

Ms. Frymier's grievance sought to use the reduction in force statute (hereinafter "RIF"), W. Va.Code § 18B–7–1(b) (2004) (Repl.Vol.2007),[4] to bump the less senior employee. Her grievance was denied at all levels, and she appealed to the Circuit Court of Gilmer County. The circuit court affirmed all of the findings by the West Virginia Education and State Employees Grievance Board (hereinafter "grievance board"), finding that the "bump provision of section (b) [of W. Va.Code § 18B–7–1] clearly is applicable only in layoff situations, and would not authorize the Court to grant [Ms. Frymier] the relief she seeks, even had the Court accepted her interpretation of the rest of the section." Further, Ms. Frymier raised the issue of favoritism for the first time on appeal to the circuit court. Because Ms. Frymier had not exhausted her administrative remedies on the issue of favoritism, the circuit court remanded the issue for consideration before the grievance board.

On remand, Ms. Frymier asserted that the retention of a similarly-situated, but less-senior, employee in a 1.0 FTE position constituted favoritism. GSC responded that the difference in job duties was the reason that another less-senior employee was allowed to remain in the 1.0 FTE position. Ms. Frymi-

---

**1.** See Discussion, Section III, A., *infra*, for the relevant language of W. Va.Code § 18B–7–1 (2004) (Repl.Vol.2007).

**2.** The style of this case also lists the Higher Education Policy Commission ("HEPC") as a party. The creation of the HEPC by W. Va.Code § 18B–1B–1, *et seq.*, was to "develop, gain consensus around and oversee the public policy agenda for higher education[.]" W. Va.Code § 18B–1B–1 (2004) (Repl.Vol.2007). However, it appears that, throughout this case, the HEPC was a party in name only. GSC provides the explanation that the HEPC was included in the caption of the case by the West Virginia Edu-cation and State Employees Grievance Board under the erroneous belief that the HEPC governs GSC. The propriety of including the HEPC as a party is not an issue before this Court, and the inclusion or exclusion of the HEPC does not affect the outcome of this case.

**3.** One of the other Accounting Assistants whose position was reduced from 1.0 to 0.87 FTE had less seniority than Ms. Frymier. The other Accounting Assistant whose hours were reduced had more years of seniority than Ms. Frymier.

**4.** *See* note 1, *supra*.

er's grievance was denied at all levels, and she appealed to the Circuit Court of Gilmer County, which also refused the relief she sought.

The circuit court found as follows:

> [Ms. Frymier] and [the less-senior co-worker] were similarly situated, and [the less-senior co-worker], and [Ms. Frymier] were treated differently. However, the facts are undisputed that the difference in treatment was related to the "actual job responsibilities," as is required under *Tyler [Board of Educ. of the County of Tyler v. White*, 216 W.Va. 242, 605 S.E.2d 814 (2004)].[5] [The less-senior co-worker] had to be on the job during specific hours so that the cashier's window would be open to the students, therefore it was not possible to reduce her hours, whereas [Ms. Frymier] did not have to perform her job during specific hours, therefore making it possible to reduce her hours.... Part of [the less-senior co-worker's] job responsibilities are to be available to students during regular hours, the decision to keep her as a full-time employee was based on the desire of the College to provide services to the students, and was not an arbitrary or capricious decision.

(Footnote added). While finding that the two employees were similarly situated but treated differently, the circuit court held that the disparate treatment was related to the actual job responsibilities.

Following the circuit court's first order denying Ms. Frymier the application of the RIF statute, Ms. Frymier appealed to this Court. The appeal was accepted, but was held in abeyance at the request of Ms. Frymier until the issue of favoritism had also been decided. Ms. Frymier's grievance on the issue of favoritism was denied at all levels below, and her appeal to this Court on that matter was also accepted and consolidated with her appeal on bumping rights. All matters are now properly before this Court for review.

## II.

## STANDARD OF REVIEW

■ This case comes before this Court as an appeal from the Circuit Court of Gilmer County, which affirmed the decisions made by the West Virginia Education and State Employees Grievance Board. The appeal provisions of W. Va.Code § 29–6A–7 (1998) (Repl.Vol.2004)[6] provide that an appeal may be taken to a circuit court where the final grievance decision:

> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
>
> (2) Exceeds the hearing examiner's statutory authority;
>
> (3) Is the result of fraud or deceit;
>
> (4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va.Code § 29–6A–7. More specifically articulated by this Court is the directive that "[a] final order of the hearing examiner for the West Virginia Education and State Employees Grievance Board, made pursuant to W. Va.Code, 29–6A–1, *et seq.* [ (1988) (Repl. Vol.2004)], and based upon findings of fact, should not be reversed unless clearly wrong." Syl., *Quinn v. West Virginia N. Comty. Coll.*, 197 W.Va. 313, 475 S.E.2d 405 (1996). Further explaining this Court's role in the review process, we have previously stated:

> in reviewing an ALJ's [Administrative Law Judge's] decision that was affirmed by the circuit court, this Court accords deference

---

**5.** The circuit court's order recognizes that the claim before it is one of favoritism and states that it is unclear whether the discrimination theories espoused in *Board of Education of the County of Tyler v. White*, 216 W.Va. 242, 605 S.E.2d 814 (2004), apply to favoritism cases. However, the circuit court went on to conclude that "under the old standard, and under the standard in *Tyler,* that [Ms. Frymier] fails to establish her favorit-

ism claim." See Discussion, Section III, B., *infra.,* for further discussion of the *Tyler* case.

**6.** Effective March 7, 2007, the provisions of Chapter 29, Article 6A were repealed. The provisions were recodified, without substantial changes relevant to this case, in Chapter 6C, Article 2. This Opinion will refer to the statute as it existed at the time of the underlying action.

to the findings of fact made below. This Court reviews decisions of the circuit [court] under the same standard as that by which the circuit [court] reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts.... We review *de novo* the conclusions of law and application of law to the facts.

*Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995).

 This instruction is "consistent with our observation that rulings upon questions of law are reviewed *de novo*" *Quinn*, 197 W.Va. at 316, 475 S.E.2d at 408 (*citing Bolyard v. Kanawha County Bd. of Educ.*, 194 W.Va. 134, 136, 459 S.E.2d 411, 413 (1995) (per curiam)). Specifically, "[a]lthough we accord great deference to the findings of fact of the West Virginia Educational Employees Grievance Board,[7] we review, *de novo*, questions of law." Syl. pt. 2, *Maikotter v. University of W. Va. Bd. of Trs.*, 206 W.Va. 691, 527 S.E.2d 802 (1999) (footnote added). Because this Court reviews decisions of the circuit court under the same standard used by the circuit court in reviewing the decisions of an ALJ, it is clear that this Court employs a combination of deferential and plenary review. More particularly,

[g]rievance rulings involve a combination of both deferential and plenary review.

Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). Mindful of these applicable standards, we now consider the substantive issues raised herein.

### III.

### DISCUSSION

To resolve this case, this Court must address two issues. First, resolution requires an examination of W. Va.Code § 18B-7-1 (2004) (Repl.Vol.2007) to determine its application, if any, to the present case. Second, this Court will analyze Ms. Frymier's claims that she was a victim of favoritism. Ms. Frymier argues that the circuit court erred in its interpretation of W. Va.Code § 18B-7-1, and that, based on that section, she was subjected to a reduction in work force and should be allowed to bump a less senior accounting assistant out of the 1.0 FTE position.[8] She further argues that the employee

---

7. The West Virginia Educational Employees Grievance Board is, for the purposes of this appeal, now the West Virginia Education and State Employees Grievance Board. *See Harrison County Bd. of Educ. v. Carson–Leggett*, 195 W.Va. 596, 598 n. 1, 466 S.E.2d 447, 449 n. 1 (1995)(per curiam). *But cf.* W. Va.Code § 6C-3-1 (2007)(Supp.2007) (explaining that the West Virginia Education and State Employees Grievance Board is terminated, and the West Virginia Public Employees Grievance Board is created, effective July 1, 2007). We will refer to the governing board by the name that was applicable at the time of the underlying controversy, namely the West Virginia Education and State Employees Grievance Board.

8. Connected with this argument is Ms. Frymier's claim that the circuit court erred in its application of *Lucion v. McDowell County Board of Education*, 191 W.Va. 399, 446 S.E.2d 487 (1994) (per curiam). However, a review of both

circuit court orders reveals that neither order discussed this case. The grievance board's orders discussed the *Lucion* case, but the circuit court declined to do so. Our own review of the case deems it irrelevant to the present situation insofar as it relied on a different set of statutes. The *Lucion* case examined W. Va.Code § 18A–1–1, *et seq.*, which applies to county boards of education and has specific provisions encompassing reduction in force ("RIF") for county employees. Moreover, *Lucion* dealt with statutory schemes involving continuing contracts and non-relegation clauses, which are not applicable in the current situation. The present case before this Court deals with employees of a higher education facility, with a different statutory scheme involved in the attendant RIF statute. W. Va. Code § 18B–7–1, which is contained in the body of law governing the higher education system, does not contain similarly-worded provisions as those that were at issue in *Lucion*. Significantly,

who was allowed to retain the 1.0 FTE position was shown favoritism to the detriment of Ms. Frymier.

GSC argues that Ms. Frymier misreads the relevant statute, and that the circuit court correctly held that the statute does not apply to a reduction in work hours. GSC avers that an employee whose work hours have been reduced, but whose job position still exists and who is still currently employed, has not been temporarily furloughed, permanently terminated, or laid off as required for application of the RIF statute. Thus, GSC argues that the bumping rights statute does not apply. On the issue of favoritism, GSC argues that the employment decisions were based on actual job duties, and that there was a valid reason that another employee was maintained in her 1.0 FTE position as opposed to Ms. Frymier. This Opinion will first address the question of statutory interpretation, then will turn to the issue of favoritism.

### A. Application of W. Va. Code § 18B–7–1 (2004) (Repl. Vol 2007)

Ms. Frymier argues that she is entitled to bump a less-senior employee out of her 1.0 FTE position under W. Va.Code § 18B–7–1. The circuit court disagreed, finding that the statute does not apply to Ms. Frymier. The relevant portion of W. Va.Code § 18B–7–1, as relied on by Ms. Frymier, states as follows:

(b) All decisions by the appropriate governing board, the council or Commission or its agents at state institutions of higher education concerning reductions in work force of full-time classified personnel, whether by temporary furlough or permanent termination, shall be made in accordance with this section. For layoffs by classification for reason of lack of funds or work, or abolition of position or material

changes in duties or organization and for recall of employees laid off, consideration shall be given to an employee's seniority as measured by permanent employment in the service of the state system of higher education. In the event that the institution desires to lay off a more senior employee, the institution shall demonstrate that the senior employee cannot perform any other job duties held by less senior employees of that institution in the same job class or any other equivalent or lower job class for which the senior employee is qualified. If an employee refuses to accept a position in a lower job class, the employee retains all rights of recall provided in this section. If two or more employees accumulate identical seniority, the priority is determined by a random selection system established by the employees and approved by the institution.

 To interpret this statutory code section, we must first establish the intent of the Legislature in promulgating the statute. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Then we must examine the language used by the Legislature in promulgating its intent. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord* Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative

---

it appears that Ms. Frymier appreciated the differences in the applications of these statutes when she chose to file her case under the RIF statute contained in W. Va.Code § 18B–1–1, *et seq.*, as opposed to the RIF statute contained in W. Va.Code § 18A–1–1, *et seq.*

To the extent that the reasoning in the *Lucion* case can be applied to the present facts, it supports the ultimate decision made by the circuit

court that the reduction in the employment terms of Ms. Frymier and the thirty-six other employees was better than eliminating those jobs. *See Lucion*, 191 W.Va. at 402, 446 S.E.2d at 490 ("Although we acknowledge that the legislature has given substantial protection to service personnel, this protection does not require the Board to eliminate jobs rather than modifying the employment terms of the existing jobs.").

intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Even if a statutory section is plainly written, it is still possible for it to contain one or more undefined words. In such a situation, this Court has directed that, "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982).

The relevant statute in this case, W. Va.Code § 18B–7–1, makes clear that it governs "reductions in work force of full-time classified personnel, whether by temporary furlough or permanent termination[.]" Ms. Frymier argues that reducing the number of work hours per week is a "reduction in work force" sufficient to afford her protection under the statute. This argument might have some merit if the statute merely said "reduction in work;" however, the clear language of the statute refers to a "reduction in work force." The statute does not define the phrase "reduction in work force;" however, resorting to the common, everyday meaning of these words, Ms. Frymier's argument fails.

The phrase "reduction in work force" refers to an elimination of personnel, whereby the number of employees is diminished. Looking for a definition of "reduction in

[work] force," one is instructed to "[s]ee LAYOFF." Black's Law Dictionary 1305 (8th ed.2004). Following this directive, the term "layoff" is then defined as "[t]he termination of employment at the employer's instigation; esp. the termination—either temporary or permanent-of many employees in a short time.—Also termed *reduction in force*." Black's Law Dictionary 906 (8th ed.2004). These definitions help explain the statute's use of the phrase "reductions in work force of full-time classified personnel, whether by temporary furlough or permanent termination." The language of the Legislature makes clear that a reduction in work force is a reduction in the number of employees that is effected by either a layoff or a permanent termination. Neither a layoff nor a permanent termination applies in this case, which deals only with a reduction in hours. The statute does not deal with a reduction in the number of hours worked, but rather, deals with a reduction in the number of persons employed. Because Ms. Frymier's position was not terminated nor was she laid off, the statute does not apply.[9] Thus, the circuit court's decision that Ms. Frymier is not afforded bumping rights under W. Va.Code § 18B–7–1 is affirmed.

### B. Issue of Favoritism

Ms. Frymier's second argument is that she was the victim of favoritism.[10] The circuit court disagreed. The circuit court found that Ms. Frymier and the less-senior co-worker who was maintained at a 1.0 FTE position were similarly situated and were treated differently. However, the circuit court went on to find that this difference in treatment was related to their actual job responsibilities, and therefore, was not illegal.

In analyzing Ms. Frymier's argument, we must once again look to the plain wording of the statute. The term "favoritism" is defined as "unfair treatment of an employee as dem-

---

**9.** Ms. Frymier also argues that the statute applies due to a material change in duties. This argument also fails as the provision she seeks to invoke only applies to layoff situations.

**10.** The issue of favoritism was first argued on appeal from the grievance board to the circuit court. Because the issue had not been raised before the grievance board, the circuit court remanded the issue. On remand, the grievance

board ruled that no favoritism had occurred. On appeal of that issue to the circuit court, Ms. Frymier also argued that she was the subject of discrimination. The circuit court refused to hear the discrimination argument because Ms. Frymier failed to raise it on remand to the grievance board. Thus, only the issue of favoritism is properly before this Court.

onstrated by preferential, exceptional or advantageous treatment of another or other employees." W. Va.Code § 29–6A–2(h) (1988) (Repl.Vol.2004).[11] While our case law is replete with examples of discrimination cases, the issue of favoritism is not well distinguished. The analysis for the two types of cases has been commingled in many circumstances. Thus, we find it appropriate to look to the analysis available in discrimination cases for guidance on the favoritism issue that is now before us.

In the recent case of *Board of Education of the County of Tyler v. White*, 216 W.Va. 242, 605 S.E.2d 814 (2004), this Court examined a favoritism case and a discrimination case brought under W. Va.Code §§ 18–29–2(m) and (o) (1992) (Repl.Vol.2003).[12] While this Court's *Tyler* decision was couched in terms of a discrimination claim, because the case also properly included a favoritism allegation, it follows that the discrimination analysis was meant to encompass the favoritism review.

■ In *Tyler*, we held that

[a] discrimination claim under W. Va. Code § 18–29–2(m) (1992), need only establish that the adverse employment action was neither job related nor agreed to by the employee who brings the claim. Once a claim is established, an employer cannot escape liability by asserting a justification, such as financial necessity, for the discriminatory treatment. To the extent our prior cases are inconsistent with this holding, they are expressly overruled.

Syl. pt. 5, *Tyler*, 216 W.Va. 242, 605 S.E.2d 814. Applying the above-cited principle to

the present case, there is no contention that Ms. Frymier agreed to the reduction in hours. Thus, our analysis focuses on whether the adverse employment action was job related.[13]

■ The record reveals that, while Ms. Frymier and the less-senior 1.0 FTE were similarly situated, their job duties were different. The less-senior employee served as a school cashier, which required her to be present during specific hours. Ms. Frymier did not perform cashier functions at the public window and was not required to be on the job during specific hours. Thus, it was possible to reduce her employment status without affecting her own job duties or those of other employees. GSC stated that its employment decision was not based on seniority or job performance, but rather, was based on job duties. This assertion is further bolstered by Ms. Frymier's own testimony during the proceedings before the grievance board. During questioning by counsel, in discussing the position that was maintained as a 1.0 FTE job, Ms. Frymier answered as follows:

Q Had you at one point been offered that persons [sic] very job?

A Yes.

· · ·

Q What had happened?

A She had walked off and they had asked me to take the position, it was a lateral move, and I agreed to, and when I agreed to, they let me know that she had wanted to come back and I assumed—they asked me if I still wanted that position and I decided that instead of retraining each of us, because I would of needed some re-

---

11. This code section was repealed and recodified in Chapter 6C, Article 2, effective March 7, 2007. The definition of "favoritism" is now found at W. Va.Code § 6C–2–2(g)(*l*)(iii) (2007) (Supp.2007).

12. While the *Tyler* case discussed discrimination and favoritism under Chapter 18, Article 29 of the West Virginia Code, the definitions examined are identical to the definitions of discrimination and favoritism as outlined by Chapter 29, Article 6A, that is the subject of the present appeal. Both chapters involve grievance procedures of educational employees. Further noted by this Court is the fact that W. Va.Code § 18–29–2 was repealed effective March 7, 2007, and claimants are hereafter referred to W. Va.Code § 6C–2–1,

*et seq.* This Opinion will refer to the state of the law as it existed when decided by the circuit court.

13. As was recognized in the *Tyler* opinion, this analysis would not apply if the case before us was a discrimination case brought pursuant to the body of law governing the West Virginia Human Rights Commission. *See Tyler*, 216 W.Va. at 246, 605 S.E.2d at 818 ("There are critical differences between discrimination claims under the education statutes and discrimination claims brought under the Human Rights Act which preclude the application of the same legal analysis to both types of claims.").

training on the new stuff, and she definitely had never done my position, that she would of needed a lot [of] training. It would just be smoother to stay in the positions we were in and benefit the college more that way.

Q And then about two months later you found out she was retained at 100% and you were reduced?

A Right.

Any difference in treatment was purely related to actual job responsibilities and the desire of the GSC to maintain its current hours of operation at the public cashier's window. Thus, Ms. Frymier's favoritism claim fails and the circuit court's decision is affirmed.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision that W. Va.Code § 18B–7–1 does not apply to Ms. Frymier because there was no reduction in work force through either termination or temporary furlough. Moreover, we affirm the circuit court's decision that Ms. Frymier was not the victim of favoritism. Thus, the April 13, 2004, and June 4, 2006, orders of the Circuit Court of Gilmer County are affirmed.

Affirmed.

Justices STARCHER and ALBRIGHT dissent and reserve the right to file dissenting opinions.

Justice MAYNARD concurs and reserves the right to file a concurring opinion.

ALBRIGHT, Justice, dissenting:

I respectfully dissent from the majority opinion in this case. The majority affirms the findings of the lower court based upon

the majority's perception that the reduction in force (hereinafter "RIF") statute at issue in this case, West Virginia Code § 18B–7–1(b) (2004) (Repl.Vol.2007), applies only to an "elimination of personnel, whereby the number of employees is diminished." The majority consequently reasons that the RIF statute in question does not apply to the present case, in which an alteration in the terms and conditions of employment occurred, resulting in a reduction in number of hours worked and compensation received by Mrs. Frymier.

The majority addresses the grievance board's discussion of this Court's opinion in *Lucion v. McDowell County Board of Education*, 191 W.Va. 399, 446 S.E.2d 487 (1994), but dismisses that case as "irrelevant to the present situation." Indeed, the *Lucion* decision was based upon evaluation of several statutes applicable to employment decisions by county boards of education, including a RIF statute. Despite the obvious distinctions between the higher education RIF statute and the county board of education RIF statute, the *Lucion* case provides guidance, particularly with regard to the statutory protections provided by the various statutes and the situations to which a RIF statute might be applicable.

The *Lucion* Court analyzed a county board of education's decision to terminate the contracts of service personnel and then reissue their contracts with altered terms, reducing the salaries of those personnel. The Court examined several statutory requirements, including the non-relegation clause,[1] provisions governing contract termination, and the RIF statute applicable to county board of education decisions. The Court ultimately found that the personnel were not entitled to relief since the board of education had properly terminated the contracts and thereafter reissued separate contracts with reduced terms.

---

1. The non-relegation clause at issue in *Lucion* prohibited county boards of education from reducing the salary or benefits of school service personnel continuing in the same job position and classification without an employee's consent. The Court found that the non-relegation clause did not provide relief under the *Lucion* circumstances since the personnel contracts had actually been terminated and thereafter reissued with different employment terms. Justice McHugh, in a dissent, expressed the belief that the non-rele-

gation clause had been violated and that the *Lucion* personnel should have been provided relief by this Court. Justice McHugh wrote: "The legislature has obviously attempted to strike a balance between protecting the rights of the school service personnel to ensure job security and the rights of the board of education to make necessary decisions regarding employment." 191 W.Va. at 405–06, 446 S.E.2d at 493–94 (McHugh, Justice, dissenting).

In addressing the guiding statutory framework and underlying principles, the *Lucion* Court explained as follows:

If a board of education decides to *reduce the number of jobs* for service personnel, the board must follow the reduction in force procedures of *W. Va.Code* 18A–4–8b [1990]. If a board of education decides to *reduce the employment terms* for particular jobs, the board must first terminate the existing contracts by following the procedures of *W. Va.Code* 18A–2–6 [1989], and second fill the job vacancies by following the procedures and requirements of *W. Va.Code* 18A–4–8b [1990]. *In either case,* a board of education must "make decisions affecting promotion and filling of any service personnel positions of employment or jobs ... on the basis of seniority, qualifications and evaluation of past service." *W. Va.Code* 18A–4–8b [1990].

191 W.Va. at 402–03, 446 S.E.2d at 490–91 (footnotes omitted) (emphasis supplied).

While the case sub judice does not involve county board of education personnel, the guiding principles are similar. West Virginia Code § 18B–7–1(b) and (c), applicable in this case, provide as follows:

(b) All decisions by the appropriate governing board, the council or Commission or its agents at state institutions of higher education concerning *reductions in work force of full-time classified personnel, whether by temporary furlough or permanent termination,* shall be made in accordance with this section. For layoffs by classification for reason of lack of funds or work, or abolition of position or material changes in duties or organization and for recall of employees laid off, consideration shall be given to an employee's seniority as measured by permanent employment in the service of the state system of higher education. In the event that the institution desires to lay off a more senior employee, the institution shall demonstrate that the senior employee cannot perform any other job duties held by less senior employees of that institution in the same job class or any other equivalent or lower job class for which the senior employee is qualified. If an employee refuses to accept a position in a lower job class, the employee retains all rights of recall provided in this section. If two or more employees accumulate identical seniority, the priority is determined by a random selection system established by the employees and approved by the institution.

(c) Any employee laid off during a *furlough or reduction in workforce* is placed upon a preferred recall list and is recalled to employment by the institution on the basis of seniority. An employee's listing with an institution remains active for a period of one calendar year from the date of termination or furlough or from the date of the most recent renewal. If an employee fails to renew the listing with the institution, the employee's name may be removed from the list. An employee placed upon the preferred list shall be recalled to any position opening by the institution within the classifications in which the employee had previously been employed or to any lateral position for which the employee is qualified. An employee on the preferred recall list does not forfeit the right to recall by the institution if compelling reasons require the employee to refuse an offer of reemployment by the institution.

W.Va.Code § 18B–7–1(b) and (c) (emphasis supplied).

The majority holds that the "Legislature makes clear" that a reduction in work force means "a reduction in the number of employees that is effected by either a layoff or a permanent termination." I disagree regarding that alleged statutory clarity. The statute fails to provide a definition for the phrase "reduction in work force," and the precedent of this Court has not been extensive in this area. However, the principles established in *Lucion,* while admittedly premised upon a substantially more complex set of statutory provisions, remain viable. The *Lucion* standard is clear. In the county board of education setting, the non-relegation clause prohibits reduction of the salary or benefits of service personnel continuing in the same job position and classification without an employee's consent; the RIF statute must be followed if the number of jobs is reduced; and the statutory termination and reapplication

by seniority procedures must be followed if the employment terms are reduced.

That very precise methodology is designed to prevent the thwarting of the purposes underlying the RIF statutory schemes. Yet, Mrs. Frymier's case constitutes a crack in the armor, an amalgam of the types of employment reduction methods discussed in *Lucion*. It is not precisely identical to any one of those methods, it is not a board of education case, and it is not expressly prohibited by the standards this Court enunciated in *Lucion*. Therein lies the reasoning of the majority in denying relief to Mrs. Frymier.

However, the majority's narrow reading of the statute to exclude this situation from coverage of the RIF protections, as well as its disregard of the *Lucion* principles, is in error. As the New Jersey Appellate court succinctly stated, "[n]o one disputes that reduction of a full-time job to part-time is a reduction in force (RIF)." *Bednar v. Westwood Bd. of Educ.*, 221 N.J.Super. 239, 534 A.2d 93, 94 (1987), *cert denied*, 110 N.J. 512, 541 A.2d 1371 (1988), citing *Klinger v. Cranbury Tp. Bd. of Ed.*, 190 N.J.Super. 354, 463 A.2d 948 (1982), *cert denied*, 93 N.J. 277, 460 A.2d 678 (1983). The *Klinger* court concisely stated: *"Reduction in hours of employment is considered a reduction in force."* 463 A.2d at 950 (emphasis supplied).

The rationale underlying these cases is simply that a reduction in work force does not necessarily mean an elimination of an entire position. A reduction in work force can be accomplished more insidiously. The effects may not be as immediate or as overtly detrimental. It may be a gradual shift, reducing hours only a few at a time, but those subtle alterations result in a cumulative effect that is no less damaging to the affected individual and no less violative of the spirit of the statutory protections. The record clearly reflects that Mrs. Frymier lost over thirteen percent of her salary in this decrease in overall employment force. Her hours were reduced by one hour per day, amounting to a reduction of at least twenty hours per month. As the Colorado Court of Appeals explained in *Valdez v. Cantor*, 994 P.2d 483 (Colo.App. 1999), a RIF is considered a "reduction in the net strength of the employing activity." 994

P.2d at 485, quoting *Ritter v. Strauss*, 261 F.2d 767, 771 (D.C.Cir.1958). I dare say that the honorable majority in this case would be plenty upset if their respective salaries were abruptly reduced by thirteen percent. In their case, the Constitution of this state protects them against such a result. I do not understand why the majority is unwilling to offer Mrs. Frymier like protection under the RIF statute.

The employment alterations in the present case, while not subjecting Mrs. Frymier to outright termination, represent a reduction in the net strength of the employing activity and warrant application of the RIF statute. I therefore respectfully dissent from the majority opinion in this case on that issue.

I also dissent from the majority's finding that Mrs. Frymier has not demonstrated that she was the victim of discrimination and favoritism. The record demonstrates that Mrs. Frymier and Ms. Gifford were similarly situated. Ms. Gifford retained a full-time position, while Mrs. Frymier's position was diminished in hours and salary. The explanation provided by the employer, to the effect that the cashier's position had to include extended hours to serve the needs of the cashier window, is not a legitimate basis for the employment decision. Mrs. Frymier could have served just as effectively in the cashier position, and she should have been selected for that position based upon her seniority. The employment decision constitutes discrimination against Mrs. Frymier and favoritism toward Ms. Gifford. Based upon the majority's ruling to the contrary, I respectfully dissent on that issue.

I am authorized to state that Justice STARCHER joins in this dissenting opinion.

MAYNARD, Justice, concurring:

I am writing separately in this case because it has been suggested that W.Va.Code § 18B–7–1 (2004) should be interpreted to mean that any change in the terms and conditions of employment of an employee covered by the statute constitutes a reduction in force. In effect, my dissenting colleagues would subject every administrative decision which changes the status of an em-

ployee of a state institution of higher education to the "bumping" requirements of the statute. Such an interpretation of the statute would distort the clear intent of the Legislature and would disrupt the management of those institutions by requiring the reshuffling of employees every time an administrator tries to cut costs. Furthermore, the constant need to re-train employees with greater seniority who have "bumped" their way into other positions could actually lead to higher costs and less efficiency.

The majority's decision in this case is in accordance with this Court's long-standing rules of statutory interpretation. Specifically,

[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there ... [i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled or rewritten ... [and] [i]f the language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery.

*State v, Richards,* 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999) (internal citations and quotations omitted). Clearly, W.Va.Code § 18B–7–1 only applies to "reductions in work force of full-time classified personnel, whether *by* temporary furlough or permanent termination." (Emphasis added). Since Ms. Frymier was not permanently terminated or subject to a temporary layoff, the statute at issue has no application. Accordingly, I concur with the majority's decision in this case.