# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Mary Sue Miller,**
**Petitioner Below, Petitioner**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 19-1109** (Kanawha County 19-AA-64)

**Marion County Board of Education,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mary Sue Miller, by counsel John Everett Roush, appeals the November 12, 2019, order of the Circuit Court of Kanawha County that granted Respondent Marion County Board of Education's appeal of the West Virginia Public Employees Grievance Board's May 24, 2019, decision. The circuit court found that the grievance board erred as matter of law in finding (1) that petitioner timely filed her grievance, and (2) that the Marion County Board of Education discriminated against petitioner. Respondent, by counsel Richard S. Boothby and Howard E. Seufer, Jr., filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner worked as an autism mentor/aide at East Fairmont High School during the 2017-2018 school year. She, along with other aides and a teacher, (1) assisted students with feeding and toileting, and (2) lifted students into and out of their wheelchairs.

On February 5, 2018, petitioner had surgery for a nonwork-related condition. On April 16, 2018, petitioner sought to return to work with the restriction from her doctor that she lift no more than thirty pounds. Thus, petitioner needed help lifting a student into and out of a wheelchair. Petitioner states that the task of getting a student into and out of a wheelchair was always a two-person job and, therefore, the accommodation she required was to have another employee lift the student's torso while she lifted only the student's legs.

1

Respondent refused to allow petitioner to return to work as long as she had any restrictions. Therefore, petitioner did not return to work until May 17, 2018, and, as a result, petitioner used an additional twenty-two "leave with cause" days.

Petitioner claims that on May 21, 2018, she learned that M.S., a sign support specialist who also worked at East Fairmont High School during the 2017-2018 school year, missed three days of work due to nonwork-related injuries. Petitioner states that when M.S. returned to work, she was wearing something like a cast on one arm. Petitioner contends that, due to the condition of M.S.'s arm, M.S. (1) could not help the student to whom she was assigned with toileting, and (2) needed help with putting the student into a wheelchair because M.S. could lift only the student's legs. Petitioner also claims that she saw the student's private nurse pushing the student's wheelchair, which was something M.S. normally did.

Later on May 21, 2018, petitioner spoke with the school's principal and vice-principal about the alleged difference in treatment between M.S. and herself. Petitioner also contacted Frank Caputo, her union representative from AFT West Virginia, who arranged for a May 25, 2018, meeting with Mason Neptune, then respondent's director of human services. Following that meeting, petitioner and Mr. Caputo met with Superintendent Gary Price on June 4, 2018, Petitioner states that Mr. Caputo, who had worked as a union representative for many years, told her that Mr. Price would give serious consideration to petitioner's problem. However, on June 18, 2018, Mr. Price informed Mr. Caputo that he would take no action on petitioner's complaint.

Petitioner initiated her grievance on June 22, 2018, within fifteen working days of June 18, 2018, the date she claims she was unequivocally notified that Mr. Price would take no action on her behalf. Petitioner argued that respondent violated West Virginia Code § 6C-2-2, regarding favoritism and discrimination, and § 18A-4-5B, regarding local policies and practices. Petitioner sought the following relief: "reinstatement of sick/personal [leave] utilized from April 11, 2018 through May 17, 2018 and[/]or compensation for all lost wages and all benefits, pecuniary and nonpecuniary, with interest for that time period."

Petitioner's level one grievance was denied with the finding that "[e]ven if her grievance had not been filed untimely, [petitioner] failed to prove that respondent treated [M.S.] or any other similarly-situated employee differently than [petitioner] was treated."

As for petitioner's level two mediation, the grievance board entered an "Order of Unsuccessful Mediation" on January 2, 2019,

At petitioner's level three hearing, petitioner's coworker, M.S., testified that she wore a brace to immobilize her thumb, and that the brace was covered with an Ace bandage. M.S. also testified that she had no restrictions and that it was up to her how much pushing and lifting she performed. Finally, M.S. testified that she did not seek any accommodation regarding her thumb.

By decision dated May 24, 2019, the grievance board granted petitioner's grievance finding that she timely filed her grievance and that respondent discriminated against her. Specifically, the grievance board found that,

2

[petitioner] and Mr. Caputo were following the method utilized in [their] county by following the chain of command to see if the problem could be resolved locally. Although Mr. Price did not give an iron-clad assurance that he would rectify the situation, his assurance that he would look into the matter was very close to such an assurance. In any event, if the date that started the fifteen-day clock running is designated as that date of the initial meeting with Mr. Price, the grievance [was] still timely filed.

Respondent appealed to the circuit court. In its "Final Order," the circuit court reversed the administrative law judge's order and found that petitioner did not timely file her appeal in light of West Virginia Code § 6C-2-4(a)(1), which provides, in relevant part:

> Within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date upon which the event became known to the employee, or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, an employee may file a written grievance with the chief administrator stating the nature of the grievance and the relief requested and request either a conference or a hearing.

The circuit court rejected petitioner's claims (1) that her delay in filing a grievance against respondent was a mere technical error that did not invalidate the grievance, and (2) that she substantially complied with the appropriate procedure. The court found that petitioner did not merely commit a technical error, but instead filed her grievance outside the filing deadline found in West Virginia Code § 6C-2-4(a)(1). The court noted that petitioner learned about M.S.'s return to work on May 21, 2018, but that petitioner did not file her grievance until June 22, 2018, more than a month later and, well past the fifteen-day filing period. The court concluded that petitioner "was free to file her grievance and continue to discuss resolution of the matter with the appropriate individuals, but the grievance nonetheless needed to be filed within fifteen days of May 21, 2018." As for petitioner's claim that she was denied an accommodation while M.S. was granted one, the court found that petitioner presented no evidence that M.S. sought an accommodation or received one, while petitioner did seek an accommodation due to the medical limitations noted in her doctor's order. Thus, the court concluded that respondent did not treat petitioner differently than M.S., because petitioner and M.S. were not similarly situated.

Petitioner now appeals.

"[T]his Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the ALJ." West Virginia Code § 6C-2-5(b) sets that standard and explains the elevated burden an appellant must meet:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;

3

(2) Exceeds the administrative law judge's statutory authority;
(3) Is the result of fraud or deceit;
(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As we held in Syllabus Point 1 of *Cahill v. Mercer County Board of Education*, [208 W. Va. 177, 539 S.E.2d 437 (2000)] our review is part plenary and part deferential:

> [g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Finally, we have held that "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W. Va. Code, [6C-2-1], et seq. [ ], and based upon findings of fact, should not be reversed unless clearly wrong." [Syl. Pt. 3, *Armstrong v. West Virginia Division of Culture and History*, 229 W. Va. 538, 729 S.E.2d 860 (2012) (citing Syl. Pt. 1, *Randolph County Board of Education v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989)].

*Wilfong v. Randolph Cty. Bd. of Educ.*, 243 W. Va. 25, --, 842 S.E.2d 229, 232-33 (2020) (footnotes omitted).

Petitioner raises two assignments of error on appeal. Petitioner first argues that the circuit court erred in concluding that the time limit for the initiation of her grievance was not tolled until her informal efforts to obtain relief received a definite answer from the county superintendent.

On appeal, petitioner admits that West Virginia Code § 6C-2-4(a)(1) requires a grievant to file his or her appeal "[w]ithin fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date upon which the event became known to the employee . . . ." However, petitioner argues that the circuit court applied West Virginia Code § 6C-2-4(a)(1) in a manner that "flies in the face" of syllabus point 1 of *Morgan v. Pizzino*, 163 W. Va. 454, 256 S.E.2d 592 (1979) (requiring that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee."). Petitioner further argues, without citation to any authority, that the circuit court should have found that petitioner's informal attempts to seek a resolution tolled that deadline. Petitioner further contends that the circuit court erred in finding that she was unequivocally notified of the action giving rise to the grievance. Petitioner avers that the administrative law judge correctly found that date to be June 18, 2018, as opposed to May 21,

2018, the date when petitioner learned about M.S.'s medical condition. Petitioner claims that she followed the chain of command in seeking redress, i.e., she spoke with her principal, then the county human resources director, and, finally, the superintendent. Thus, she contends it was reasonable for her to believe that she had fifteen days to file her grievance after Superintendent Price unequivocally notified her that she would be granted no relief.

Lastly, petitioner argues that this case is comparable to *Steele v. Wayne County Board of Education*, Docket, No. 50-87-062-1, West Virginia Education Employees Grievance Board (Sept. 29, 1987). In that case, Carl W. Steele, a school employee, asked the superintendent for relief regarding prior work experience credit. Mr. Steele's superintendent agreed to research the issue and get back to Steele. Six months later the superintendent advised Mr. Steele that he would grant no relief. Mr. Steele filed a grievance and an administrative law judge ruled that Mr. Steele's grievance was not barred on the basis of timelines. The administrative law judge held as follows:

> An employee who makes a good faith, diligent effort to resolve a grievable matter with school officials and relies in good faith upon representations of these officials that the matter will be rectified will not be barred from pursuing the grievance pursuant to W.Va. Code, 18-29-1, et seq. upon the denial thereof.

(Underlines in original.)

For the reasons stated below, we concur with the circuit court's finding that petitioner filed her grievance after the fifteen-day statutory deadline found in West Virginia Code § 6C-2-4(a)(1) had passed. As noted above, § 6C-2-4(a)(1) clearly requires that a grievance be filed "[w]ithin fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date upon which the event became known to the employee . . . ." That did not happen here. Petitioner claims that on May 21, 2018, she learned about M.S.'s alleged accommodation; however, she did not file her grievance until June 22, 2018, more that fifteen days later. As for the administrative law judge's reliance on *Steele*, we find it to be misplaced.

The grievance board's 1987 decision in *Steele* was issued two decades before West Virginia Code § 6C-2-4(a)(1) was enacted by the West Virginia Legislature in 2007. The statute at issue in *Steele*, West Virginia Code §§ 18-29-1 to -11, adopted in 1985, is significantly different than § 6C-2-4(a)(1). Of particular note, West Virginia Code §18-29-4(a)(1) included a mandatory informal conference:

> Before a grievance is filed and within fifteen days following the occurrence of the event upon which the grievance is based, or within fifteen days of the date on which the event became known to the grievant or within fifteen days of the most recent occurrence of a continuing practice giving rise to a grievance, *the grievant or the designated representative shall schedule a conference with the immediate supervisor to discuss the nature of the grievance and the action, redress or other remedy sought. . . .*

(Emphasis added.) Such an informal review has not been statutorily required since West Virginia Code § 6C-2-4 was first enacted. We also note that the administrative law judge's order did not

contain any analysis of §18-29-4(a)(1) or § 6C-2-4. Thus, we conclude that the administrative law judge's erroneous application of *Steele* in the instant case wrongfully granted petitioner the unilateral authority to extend the statutory filing deadline for grievances for as long as he continued to seek relief up a chain of command.

This Court's decision in *Wilfong* is applicable here: Ms. Wilfong was employed with the Randolph County Board of Education in a unique position, half-time teacher/half-time principal. 243 W. Va. at --, 842 S.E.2d at 231. However, her school was closing at the end of the 2016-2017 school year. *Id.* By letter dated April 20, 2017, the school board notified Ms. Wilfong that she had been approved for a transfer, but she had not yet been assigned a position for the 2017-2018 school year. *Id.* The school board's personnel director told Ms. Wilfong that she would be an automatic candidate for any job for which she applied, but she still needed to apply and be interviewed for any job she wished to obtain. *Id.* Several administrative positions opened in the spring and early summer of 2017; however, Ms. Wilfong did not apply for them. 243 W. Va. at --, 842 S.E.2d at 232. Mid-summer, Ms. Wilfong applied and interviewed for a full-time administrative position, but she did not get that job. *Id.* Thereafter, in late July, Ms. Wilfong applied for a full-time teaching position and was hired for that job on August 1, 2017. *Id.* That same day, Ms. Wilfong filed a grievance claiming that the school board failed to place her in the full-time administrative position. *Id.* At Ms. Wilfong's level three hearing, the school board argued that her grievance was filed outside the fifteen-day window found in West Virginia Code § 6C-2-4(a)(1). *Id.* Specifically, the school board argued that Ms. Wilfong should have filed her grievance within fifteen days of receiving the school board's April 20, 2017 notice, informing her that she had been approved for transfer but was not yet assigned a position. *Id.* Ms. Wilfong countered that she was not aggrieved until she knew with finality that the school board would not place her in the administrative position until she accepted the full-time teaching position on August 1, 2017. The grievance board found Ms. Wilfong's grievance to be untimely filed because the school board's April 20, 2017, notification triggered the running of the fifteen-workday deadline to grieve the schoolboard's decision. *Id.* The circuit court, by order entered August 3, 2018, affirmed the Board's decision finding that Ms. Wilfong's grievance was untimely filed. Thereafter, this Court affirmed the circuit court's August 3, 2018, order.

Likewise, in the instant case, the administrative law judge confused the event upon which petitioner's grievance was based, that is, the allegedly discriminatory treatment on May 21, 2018, with Mr. Price's later decision not to provide petitioner the relief she sought, the return of twenty-two paid leave days. Therefore, we find that the circuit court did not err in finding that petitioner's grievance was untimely filed.

In petitioner's second and final assignment of error, she argues that the circuit court erred in concluding that respondent did not treat her differently than it treated M.S. Petitioner claims that she and M.S. were similarly situated because both she and M.S. needed another employee to help them lift a student into and out of a wheelchair; yet, M.S. was allowed to return to work with her disability, while petitioner was not allowed to return to work with her medical restrictions.[1]

---

[1] The grievance statute defines "discrimination" as "any difference in the treatment of similarly situated employees, unless the differences are related to the actual job responsibilities of the employees or are agreed to in writing by the employees." W. Va. Code § 6C-2-2(d).

Because petitioner's grievance was untimely filed, we need not review this second assignment of error. However, we note that petitioner failed to prove that she and M.S. were similarly situated. The record on appeal shows that one of petitioner's essential job duties was to lift a nearly-adult student into and out of a wheelchair several times a day. Conversely, M.S. served as a sign-language interpreter for a single student who also had her own full-time private nurse. Further, petitioner sought an accommodation for a medical restriction that impacted her job. Petitioner admitted under oath that she had no evidence showing that M.S. asked for any such accommodation. Moreover, M.S. testified that she had no medical restriction. Thus, petitioner and M.S. were clearly not similarly situated. Because petitioner failed to meet her burden of proof that she was similarly situated to another employee who received different treatment, she failed, as a matter of law, to prove a discrimination/favoritism claim.

Accordingly, for the foregoing reasons, we affirm the circuit court's November 12, 2019, order.

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

"Favoritism" is defined as the "unfair treatment of an employee as demonstrated by preferential, exceptional, or advantageous treatment of a similarly situated employee" unless agreed to in writing or related to actual job responsibilities. W. Va. Code § 6C-2-2(h), in part. Petitioner alleged that respondent violated West Virginia Code § 6C-2-2. To establish discrimination or favoritism, an employee must prove that s/he has been treated differently from one or more similarly situated employees; that the different treatment is not related to the actual job responsibilities of the employees; and that the difference in treatment was not agreed to in writing by the employee. *See Frymier v. Higher Educ. Policy Comm'n*, 221 W. Va. 306, 655 S.E.2d 52 (2007).